**Joseph Wayne SMITH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–09–00634–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

March 31, 2011.

Discretionary Review Refused Aug. 24, 2011.

Kurt B. Wentz, Houston, for Appellant.

Patricia R. Lykos, Harris County Dist. Atty., Donald W. Rogers, Asst. Dist. Atty., Houston, for State.

Panel consists of Justices KEYES, HIGLEY, and BLAND.

## OPINION

JANE BLAND, Justice.

A jury convicted Joseph Wayne Smith of murder and assessed his punishment at twenty-five years' confinement. *See* TEX. PENAL CODE ANN. § 19.02(b) (West 2003). On appeal, Smith contends that: (1) the evidence is factually insufficient to support his conviction; (2) the evidence is legally and factually insufficient to support the jury's negative finding on the issue of sudden passion during the punishment phase; (3) the trial court erred in excluding testimony about the complainant's prior violent acts; (4) the trial court erred in sustaining the prosecutor's objections to a witness's opinion that the complainant was a violent person; and (5) the trial court deprived Smith of his constitutional right to due process of law and his right to confront the witnesses by excluding evidence of complainant's tattoos.

We hold that the evidence was legally and factually sufficient to support Smith's conviction, the evidence is legally and factually sufficient to support the jury's negative finding on the issue of sudden passion,

the trial court did not err in excluding the complainant's prior violent acts, any error by the trial court in sustaining the prosecutor's objections to the witness's opinion was harmless, and the trial court did not deprive Smith of due process or his right to confront the witnesses. We therefore affirm.

## Background

The complainant, Anthony Hawkins, and his fiancée, Trinet Fields, shared an apartment at the Los Arcos apartment complex with Smith and his girlfriend, Yereter Bernardez. In March, Hawkins and Fields told Smith and Bernardez that they were moving out of the apartment because the environment in the apartment was hostile. Fields moved their things out of the apartment, and Fields, who was the named tenant on the lease, turned her key in to the apartment office. The following day, the office manager at the complex informed Smith and Bernardez that they also had to move out of the apartment.

At 8:30 p.m. that evening, Hawkins, Fields, and Mary McNulty–Brown drove Fields's rented red Impala to visit Mary's sister, Ashley McNulty–Brown, at the Stonegate Apartment Complex. Upon arriving, they first went to the apartment of Fields's friend, Terrance Foley. Foley was also a friend of Smith. Upon leaving Foley's apartment, Fields heard a loud noise of something suddenly deflating and noticed that someone had stabbed all four tires of her Impala. Hawkins and Foley searched the area for the person who had stabbed the tires. Mary, accompanied by Fields and Ashley, drove the Impala toward the complex's exit gate. Before the Impala reached the gate, Smith blocked it with his purple Nissan Maxima. Smith exited the Maxima, walked toward the Impala with an angry expression on his face, and looked inside the car. Mary reversed

the Impala and parked it in a parking spot. Smith returned to his Maxima and drove away. Fields used a walkie-talkie to warn Hawkins that Smith was in the parking lot. She and the other women saw Hawkins run after Smith's Maxima and out of their view.

Minutes later, Hawkins ran back to the Impala. He told the women that Smith had stabbed him. Following behind Hawkins, Smith approached the Impala. He again attempted to stab Hawkins with a knife he had in his hand. Hawkins jumped back and fell into the car. Mary placed him in the passenger-side seat. According to Fields and the other women, Hawkins was unarmed that evening. Smith then ran away from the car. Hawkins was bleeding from his left abdomen, and Fields called 911. Hawkins stopped breathing and died shortly thereafter at the hospital.

Robert Bailey, a security guard at Stonegate, observed some of the events associated with Hawkins's death. He saw the women around the Impala, heard air coming out of the car's tires, and saw holes or slashes to the tires. He witnessed a black car cut off the Impala as it moved to the exit of the apartment complex, and heard male and female voices screaming. He saw two men backing away from the Impala. One of these men held a knife in his hand. He asked the two men to leave, and they got into the black car and left the property. After he noticed a man in the Impala leaning back in the car in pain, he called 911. He testified that the man in the Impala did not have a knife in his hand. Houston Police Officers J. Pena and C. Abbondandolo investigated Hawkins's death. They found no knives at the crime scene.

Dr. Stephen Wilson, a medical examiner for the Harris County Medical Examiner's Office, performed an autopsy on Hawkins the day after his death. Hawkins's only

injury was a single stab wound to the left side of the chest. He had no other fresh abrasions or lacerations. He concluded that the cause of Hawkins's death was a single stab wound to the left side of his chest which perforated his heart and penetrated his left lung. Hawkins had alcohol and methamphetamine in his system when he died.

Smith testified on his own behalf during trial. Around 3:30 p.m. on the day of Hawkins's death, Bernardez informed Smith that they had to move out of the Los Arcos apartment by 5 p.m. because Fields had argued with the apartment manager and had thrown her keys at the leasing agent. Smith and Bernardez packed their belongings with the help of Smith's mother. While they were packing, Smith's mother had a loud phone conversation with Fields. Hawkins then phoned and spoke with Smith, but Smith hung up on Hawkins because Hawkins was hostile during the call. According to Smith, Hawkins was a very violent and aggressive person.

Around 8:30 or 9:00 p.m., Smith left the Los Arcos apartment in his Maxima with Bernardez, her three-year-old son, and her friend, Keisha Dupree. While Smith was en route to Keisha's friend's house, Foley called and asked whether Smith would help move things around his apartment at Stonegate. Smith proceeded to Stonegate and entered the complex's gate using a key code Foley had provided. When he entered the parking lot, he noticed Fields's red Impala parked near Foley's apartment. Bernardez told Smith that they should leave to avoid any further confrontation with Fields and Hawkins. As Smith's Maxima approached the exit gate of the complex at a slow rate of speed, Hawkins, looking "pissed off" and angry, ran toward it and grabbed Smith's steering wheel, causing the car to collide with several vehicles parked near the gate. Hawkins punched Smith in the face and tried to pull him out of the Maxima.

Once the Maxima came to a stop, Smith, shocked and scared, hit Hawkins with the driver-side door, caught another blow to the face, and tackled Hawkins. Both men fell to the ground. Smith testified that it was necessary to exit the Maxima and to fight Hawkins because: (1) he was being punched, hit, rushed, and "aggressed"; (2) he "[k]new there was no other way [he] could get out of the apartments because [he] had to stop at the gate still to push the code to get out"; and (3) he had to protect the two women and the small child in the car, as well as himself.

Smith further testified that Hawkins swung a knife at his stomach. Smith dodged Hawkins's knife and hit him twice in the chin. Hawkins tried to stab Smith in the neck, but Smith grabbed Hawkins's arm, which held the knife. Smith pulled his own knife out of his pocket, and stabbed Hawkins in the chest one time. After he stabbed Hawkins, Smith ran and jumped over the apartment complex fence. He denied that he returned to Fields's Impala after the fight. He testified that he did not see anyone in or near the Impala when he drove by it before his fight with Hawkins. Smith found his Maxima parked on the street outside of the complex, with Bernardez and Keisha waiting inside.

Shortly after the incident, Smith fled to Victoria, Texas. When he found out that Hawkins had died, he returned to Houston and turned himself in to the police. Bernardez and Keisha also testified at trial. They testified that Hawkins ran at the Maxima, grabbed the steering wheel, and hit several parked cars. A fight ensued between Hawkins and Smith. Keisha testified that Hawkins held a knife in his hand during the fight, but Bernardez testi-

fied that she only saw the two men use their fists during the portion of the fight she witnessed. Neither Keisha nor Bernardez witnessed Smith stab Hawkins. At some point during the fight, Bernardez drove Smith's car outside the apartment complex and parked it on a nearby street. They stated that Smith appeared shaken up when he returned to the Maxima after the fight.

### SUFFICIENCY OF THE EVIDENCE OF JURY'S REJECTION OF SMITH'S DEFENSIVE CLAIMS

In his first issue, Smith contends that the evidence is factually insufficient to support his conviction for murder because he acted in self-defense and in the defense of a third person. *See* TEX. PENAL CODE ANN. §§ 2.03, 9.02, 9.32, 9.33 (West 2003). We disagree.

*Standard of Review for Self–Defense and Defense of a Third Person*

"[T]he *Jackson v. Virginia* legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State,* 323 S.W.3d 893, 895 (Tex.Crim.App. 2010) (referring to *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Under this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson,* 443 U.S. at 319, 99 S.Ct. 2781; *In re Winship,* 397 U.S. 358, 361, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Laster v. State,* 275 S.W.3d 512, 517 (Tex. Crim.App.2009); *Williams v. State,* 235 S.W.3d 742, 750 (Tex.Crim.App.2007).

Viewed in the light most favorable to the verdict, the evidence is insufficient under this standard when either: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense; or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson,* 443 U.S. at 314, 319 n. 11, 320, 99 S.Ct. 2781; *Laster,* 275 S.W.3d at 518; *Williams,* 235 S.W.3d at 750. An appellate court may not re-evaluate the weight and credibility of the record evidence and thereby substitute its own judgment for that of the fact finder. *Williams,* 235 S.W.3d at 750.

Self-defense and defense of a third person are defenses to prosecution under Penal Code section 2.03. *See* TEX. PENAL CODE ANN. §§ 2.03, 9.02, 9.32, 9.33. A defendant has the burden of producing some evidence to support a claim of a section 2.03 defense. *Zuliani v. State,* 97 S.W.3d 589, 594 (Tex.Crim.App.2003). Once the defendant produces that evidence, the State bears the ultimate burden of persuasion to disprove the raised defense. *Id.* at 594–95. The burden of persuasion does not require that the State produce evidence, but it requires that the State prove its case beyond a reasonable doubt. *Id.* at 594; *see also Saxton v. State,* 804 S.W.2d 910, 912 nn. 3 & 4 (Tex.Crim.App.1991) (holding that State did not have to produce evidence disproving or refuting claim of self-defense, even if all evidence supporting defense was uncontradicted and consistent); TEX. PENAL CODE ANN. § 2.03(d) ("If the issue of the existence of a defense is submitted to the jury, the court shall charge that reasonable doubt on the issue requires that the defendant be acquitted."). If the jury finds the defendant guilty, then it implicitly finds against the defensive theory. *Zuliani,* 97 S.W.3d at 594.

Because the State bears the burden of persuasion to disprove a section 2.03 defense by establishing its case beyond a reasonable doubt, we review both legal and factual sufficiency challenges to the jury's rejection of such a defense under the *Jackson v. Virginia* standard. *See Brooks*, 323 S.W.3d at 895 (holding that *Jackson v. Virginia* sufficiency standard is only standard that reviewing court should apply in determining whether evidence is sufficient to support each element of criminal offense that State is required to prove beyond reasonable doubt).

*Applicable Law*

A person commits murder if he intentionally or knowingly causes the death of an individual, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. *See* Tex. Penal Code Ann. §§ 19.02(b)(1), 19.02(b)(2) (West 2003). The Penal Code, however, provides that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." Tex. Penal Code Ann. § 9.31(a). Deadly force in self-defense is justified when a person reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force or to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery. *Id.* § 9.32; *see also Schiffert v. State*, 257 S.W.3d 6, 14 (Tex.App.-Fort Worth 2008, pet. ref'd).

Similarly, a person is justified under section 9.33 in using force or deadly force to protect a third person if:

(1) under the circumstances as the actor reasonably believes them to be, the actor would be justified under Section 9.31 [self-defense] or 9.32 [deadly force in defense of person] in using force or deadly force to protect himself against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect; and

(2) the actor reasonably believes that his intervention is immediately necessary to protect the third person.

Tex. Penal Code Ann. § 9.33. A person defending on the grounds of defense of a third person stands in the shoes of the third person. *Hughes v. State*, 719 S.W.2d 560, 564 (Tex.Crim.App.1986). "So long as the accused reasonably believes that the third person would be justified in using [force] to protect himself, the accused may step in and exercise [force] on behalf of that person." *Id.* Thus, the use of force to protect a third person is justified in any situation in which the third person would be justified in using force to protect himself. *Id.*

A "reasonable belief" is defined as one that would be held by "an ordinary and prudent man in the same circumstances as the actor." Tex. Penal Code Ann. § 1.07(a)(42) (West Supp.2010). "Deadly force" is force "intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." Tex. Penal Code Ann. § 9.01(3) (West Supp.2010). "Serious bodily injury" is an injury that creates a "substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46).

*Analysis*

Smith admits that he stabbed Hawkins in the chest. The medical examiner concluded that the wound caused Hawkins's death. Smith maintains, however, that he

stabbed Hawkins in self-defense and in defense of Bernardez, her child, and Keisha. Keisha, Bernardez, and Smith testified that they tried to exit the apartment complex after they saw Fields's Impala in the parking lot. Hawkins then initiated an altercation with Smith by grabbing the steering wheel of Smith's Maxima and forcing it to collide with several parked cars. Smith testified that it was necessary to exit his Maxima and to fight Hawkins because: (1) he was being punched, hit, rushed, and "aggressed"; (2) he "[k]new there was no other way [he] could get out of the apartments because [he] had to stop at the gate still to push the code to get out"; and (3) he had to protect the two women and small child in the car and himself. Keisha and Smith testified that Hawkins held a knife in his hand during the fight. Smith claimed that he stabbed Hawkins only after Hawkins attempted to stab him in the neck, and he feared for his life as he jumped over the apartment complex fence. He also observes that none of the State's witnesses observed the fight between Hawkins and him and the stabbing of Hawkins.

 The jury's decision to reject Smith's defensive claims, however, ultimately hinges on the credibility of the witnesses. "As factfinder, the jury is entitled to judge the credibility of witnesses, and can choose to believe all, some, or none of the testimony presented by the parties." *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App.1991). The statements of the defendant and his witnesses do not conclusively prove a claim of self-defense or defense of a third party. *See Denman v. State*, 193 S.W.3d 129, 132–33 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd) (finding evidence sufficient to support conviction for aggravated assault under *Jackson v. Virginia* standard despite defendant's claim of self-defense, which

was based on testimony of defendant and other witnesses who stated that complainant had assaulted or threatened defendant on prior occasions); *see also Sells v. State*, 121 S.W.3d 748, 754 (Tex.Crim.App.2003) (holding that only evidence weighing against jury finding that defendant entered home with no specific intent to commit sexual assault was defendant's own statement, and this was not enough to render evidence insufficient).

Here, the jury chose not to believe Smith and his witnesses' testimony that he had acted in defense, either of himself or third persons, when he stabbed Hawkins. The testimony of Smith and his witnesses, in light of the other evidence presented at trial, does not render the evidence in this case insufficient to support the jury's verdict. *See Chambers*, 805 S.W.2d at 461; *see also Denman*, 193 S.W.3d at 132–33.

The other evidence includes the State's witnesses, the physical evidence, and Smith's flight after Hawkins's death, all of which undermined Smith's defensive claims. Fields, Mary, and Ashley testified that Hawkins did not carry any weapon on that night. The security guard testified that Hawkins did not have a knife in his hand when he observed him sitting in pain in the Impala. Officers Pena and Abbondandolo found no weapons at the crime scene. Smith denied the presence of anyone else at the Impala when he and Hawkins approached it, but the security guard verified that the women were present. This testimony and the physical evidence were inconsistent with Smith's version of the events that took place. *See McClesky v. State*, 224 S.W.3d 405, 409 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd) (because only defendant's gun was found at scene of shooting, physical evidence was not consistent with defendant's claims that complainant had threatened her with his gun). Fields, Mary, and Ashley also testi-

fied that Smith chased Hawkins after Smith stabbed him, and attempted to stab him again when he returned to the Impala.

Based on this other evidence, the jury could have reasonably concluded that Smith's conduct in chasing Hawkins and attempting to stab him a second time was inconsistent with his defensive claims. *See Cleveland v. State,* 177 S.W.3d 374, 387 (Tex.App.-Houston [1st Dist.] 2005, pet. ref'd), *cert. denied,* 547 U.S. 1073, 126 S.Ct. 1774, 164 L.Ed.2d 523 (2006) (finding that jury could have reasonably concluded that defendant's conduct in continuing to stab his wife's back as she lay bleeding on floor was inconsistent with his claim of self-defense). Finally, Smith's flight to Victoria after Hawkins's death is circumstantial evidence of his guilt. *See Miller v. State,* 177 S.W.3d 177, 184 (Tex.App.-Houston [1st Dist.] 2005, pet. ref'd) (finding that flight of defendant, who claimed self-defense, immediately after shooting and his attempts to hide evidence constituted circumstantial evidence of his guilt). We conclude that the jury rationally could have found that each element of the charged offense was proven beyond a reasonable doubt, and rationally could have rejected Smith's claims of self defense and defense of a third party. *See Jackson,* 443 U.S. at 319, 99 S.Ct. 2781; *see also Zuliani,* 97 S.W.3d at 594. Accordingly, we hold that the evidence was factually sufficient to support Smith's conviction for the murder of Hawkins.

### SUFFICIENCY OF THE EVIDENCE OF SUDDEN PASSION AT THE PUNISHMENT PHASE OF TRIAL

In his fifth and sixth issues, Smith asserts that the evidence is legally and factually insufficient to support the jury's negative finding on the issue of sudden passion at the punishment stage of his trial. *See*

TEX. PENAL CODE ANN. § 19.02(a), (d). We disagree.

*Standard of Review for Negative Finding on Sudden Passion*

At the punishment phase of a murder trial, a defendant may reduce a murder charge from a first-degree felony to a second-degree felony by proving by a preponderance of the evidence that "he caused the death under the immediate influence of sudden passion arising from an adequate cause." *See* TEX. PENAL CODE ANN. § 19.02(d) (West 2003); *see also Hernandez v. State,* 127 S.W.3d 206, 211–12 (Tex. App.-Houston [1st Dist.] 2003, pet. ref'd) (holding that defendant bears burden at punishment phase to prove issue of sudden passion by preponderance of evidence). " 'Sudden passion' means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." TEX. PENAL CODE ANN. § 19.02(a)(2). " 'Adequate cause' means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* § 19.02(a)(1); *see also Hernandez,* 127 S.W.3d at 211 (holding that ordinary anger or causes of defendant's own making are not legally adequate causes).

■ In *Brooks,* the Criminal Court of Appeals held that the *Jackson v. Virginia* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. 323 S.W.3d at 895. However, the civil standard, announced in *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989), is the proper standard to apply in reviewing a criminal defen-

dant's legal sufficiency challenge to a jury's negative finding for an issue that a defendant has a burden of proof. *Cleveland*, 177 S.W.3d at 387–88; *see also Nolan v. State*, 102 S.W.3d 231, 237–38 (Tex. App.-Houston [14th Dist.] 2003, pet. ref'd) (applying civil standard to legal sufficiency challenge to jury's rejecting affirmative defense). The *Sterner* standard applies to a legal sufficiency review of a jury's negative answer on sudden passion during the punishment phase because a defendant bears the burden to prove sudden passion by a preponderance of the evidence. *See Cleveland*, 177 S.W.3d at 390.

We examine the record for evidence that supports the negative finding. *See id.* at 387; *Nolan*, 102 S.W.3d at 238. If no evidence supports the negative finding, then we examine the entire record to determine whether it establishes the contrary proposition as a matter of law. *Cleveland*, 177 S.W.3d at 387; *Nolan*, 102 S.W.3d at 238. In reviewing the record, we defer to the fact finder's determination of the credibility of the witnesses and the weight to give the evidence. *Cleveland*, 177 S.W.3d at 388–89.

If the evidence is legally sufficient, then we turn to factual sufficiency. As with legal sufficiency, the *Jackson v. Virginia* standard is not the standard to use in reviewing a criminal defendant's factual sufficiency challenge to the jury's negative finding of an issue that the defendant had to prove by a preponderance of the evidence; rather, the factual sufficiency standard announced in *Meraz* is appropriate for review of issues, such as affirmative defenses, on which the defendant has the burden of proof by the preponderance of the evidence. *See Brooks*, 323 S.W.3d at 924 n. 67 (Cochran, J., concurring); *see also Meraz v. State*, 785 S.W.2d 146, 154–55 (Tex.Crim.App.1990) (holding that the proper standard for review of factual suffi-

ciency challenges to negative finding on issue that defendant had to prove by preponderance of the evidence is not *Jackson v. Virginia* standard); *Zuniga v. State*, 144 S.W.3d 477, 482 (Tex.Crim.App.2004) (holding that *Meraz* standard was suitable for sufficiency reviews regarding affirmative defenses because burden of proof on defendant is preponderance of evidence), *overruled on other grounds by Watson v. State*, 204 S.W.3d 404, 416–17 (Tex.Crim. App.2006). Accordingly, we apply the *Meraz* standard to situations when the appellate court conducts a factual sufficiency review of a jury's negative answer on sudden passion. *Cleveland*, 177 S.W.3d at 390–91 (applying the *Meraz* standard as cited in *Zuniga*, 144 S.W.3d at 482); *see also Brooks*, 323 S.W.3d at 924 n. 67.

For a factual sufficiency challenge, the standard of review is whether after considering all the evidence relevant to the issue at hand, the judgment is so against the great weight and preponderance of the evidence so as to be manifestly unjust. *Meraz*, 785 S.W.2d at 154–55. In the factual sufficiency review of the evidence, we review all of the evidence neutrally, but we do not intrude on the factfinder's role as the sole judge of the weight and credibility given to any witness's testimony. *Cleveland*, 177 S.W.3d at 390–91.

### Analysis

Smith contends that he stabbed Hawkins only after Hawkins provoked him by (1) pulling on his steering wheel as he exited the apartment complex; (2) forcing his car to collide with three parked cars; (3) causing extensive damage to his car; (4) punching Smith with his fists; and (5) threatening his safety and the safety of three persons in his car. He points to two prior acts that provide context for this provocation. First, because Hawkins and Fields broke the lease of the apartment

they shared with him, Smith had to move his possessions on short notice. Second, Hawkins had called him that evening with a hostile tone. Smith observes that no witness contradicts his and his witnesses' version of these events. Hawkins's provocation shocked, surprised, and scared him. He was afraid for his life. The jury rejected Smith's contention.

■ Examining the record for evidence that supports the jury's negative finding on the issue of sudden passion, we conclude that some evidence exists to support it. A defendant may not rely on a cause of his own making, such as precipitating a confrontation, to support his argument that he acted out of sudden passion arising from adequate cause. *Naasz v. State*, 974 S.W.2d 418, 420 (Tex.App.-Dallas 1998, pet. ref'd); *see also Trevino v. State*, 157 S.W.3d 818, 822 n. 4 (Tex.App.-Fort Worth 2005, no pet.) (noting that even if complainant fired pistol at defendant, that act would not constitute adequate cause because defendant's conduct precipitated complainant's action).

■ The jury here could have concluded based on the State's evidence that Smith precipitated the confrontation that led to Hawkins's death. Fields, Mary and Ashley stated that shortly after they discovered that someone slashed all the tires of Field's Impala in the parking lot of Stonegate, Smith drove up in his Maxima with his high beams on and blocked their car. He then got out of his car and approached them. At this point, Fields told Hawkins by walkie-talkie that Smith was in the parking lot. Since some evidence exists that Smith precipitated the confrontation that led to Hawkins's death, the evidence is legally sufficient to support the jury's negative finding on the issue of sudden passion. *See Perez v. State*, 323 S.W.3d 298, 305 (Tex.App.-Amarillo 2010, no pet.) (finding evidence factually suffi-

cient to support jury's negative finding on issue of sudden passion because some evidence existed that defendant initiated confrontation with complainant and others, and this confrontation resulted in complainant's death).

■ The evidence is also factually sufficient to support the jury's negative finding on the issue of sudden passion. As noted, the jury is the sole judge of the weight and credibility given to any witness's testimony. *See Cleveland*, 177 S.W.3d at 390–91; *see also Trevino*, 157 S.W.3d at 822 (holding that jury is free to make its own determination of defendant's credibility and reject defendant's version of events if it did not believe he was telling truth). The jury's finding on sudden passion here depended largely on accepting Smith's and his witnesses' version of the events. The jury could have doubted the story of Smith and his witnesses because of the testimony of the State's witnesses and the lack of physical evidence supporting the version of events related by Smith and his witnesses. Testimony from the State witnesses concerning events surrounding Hawkins's death differed greatly from Smith's version. Although Smith maintained that Hawkins attempted to stab him with a knife after a fight in which the two exchanged many punches to the face, the police found no knives at the crime scene, and the medical examiner testified that Hawkins had no fresh abrasions or lacerations except for the single stab wound to the chest.

In addition to the testimony he offered, Smith cites the damage to his Maxima and to the other cars in the apartment parking lot and the fact that no witnesses contradicted his version of how Hawkins provoked him by forcing his Maxima to collide with the other cars. None of this evidence, however, compelled the jury to find that Smith murdered Hawkins under the

influence of sudden passion, given the version of events that the State's witnesses offered—including Smith's arrival at the scene, slashed tires, and Smith's blocking of the vehicle and chasing of an unarmed Hawkins with a further attempt to stab him. *See Trevino,* 157 S.W.3d at 822 (finding evidence sufficient under the *Meraz* standard even though: (1) defendant testified that he was in state of terror during murder because complainant shot revolver at him; (2) police recovered revolver from crime scene; (3) a bullet hole in wall was present at scene; and (4) witness testified that complainant had previously pointed gun at defendant when she was angry).

After considering all the relevant evidence, we conclude that the judgment is not so against the great weight and preponderance of the evidence so as to be manifestly unjust. *See Meraz,* 785 S.W.2d at 154–55. We hold that the evidence is factually sufficient to support the jury's negative finding on the issue of sudden passion.

## PRIOR ACTS OF VIOLENCE

In his second issue, Smith maintains that the trial court abused its discretion in excluding the testimony of Keisha and her son, Terrell Dupree, relating to Hawkins's prior acts of violence. At trial, defense counsel proffered the testimony of Keisha and Terrell outside the presence of the jury. Terrell testified that one month before Hawkins's death, Hawkins hit Keisha in the face. Terrell and his brother intervened to protect their mother. A fight ensued between Terrell and Hawkins. During this altercation, Hawkins stabbed Terrell in the side. Terrell testified that he told Smith about this incident sometime before Hawkins's murder. The trial court refused to allow the proffered testimony. On appeal, Smith maintains this incident was admissible to show that Smith's fear of

Hawkins was reasonable or to show that Hawkins was the first aggressor.

*Standard of Review and Applicable Law*

■ A defendant in a homicide prosecution who raises the issue of self-defense may introduce evidence of the victim's violent character. Tex.R. Evid. 404(a)(2); *Torres v. State,* 71 S.W.3d 758, 760 (Tex. Crim.App.2002). This evidence may consist of opinion or reputation testimony to prove the victim acted in conformity with his violent nature. Tex.R. Evid. 404(a)(2), 405(a); *Torres,* 71 S.W.3d at 760. It may also include proof of specific, violent acts of misconduct to show the reasonableness of the defendant's fear of danger, or to show that the victim was the first aggressor. *Torres,* 71 S.W.3d at 760.

This general rule is not without limitation, however. Rule 404(b) provides for the admissibility of specific bad acts only to the extent that they are relevant for a purpose other than to show character conformity. Tex.R. Evid. 404(b); *Torres,* 71 S.W.3d at 760. If a victim's unambiguous, violent, and aggressive acts need no explanation, then evidence of a victim's extraneous conduct admitted in conjunction with his unambiguous act may not be relevant apart from its tendency to prove the victim's character conformity, which weighs against admissibility. Tex.R. Evid. 404(b); *Reyna v. State,* 99 S.W.3d 344, 347 (Tex. App.-Fort Worth 2003, pet. ref'd); *cf. Thompson v. State,* 659 S.W.2d 649, 653–54 (Tex.Crim.App.1983) (holding that when victim's conduct was ambiguously aggressive, prior, specific acts of violence are admissible only so far as they tend to explain the victim's conduct) *superseded by rule,* Tex.R. Evid. 404(a)(2), *as recognized by, Mozon v. State,* 991 S.W.2d 841, 845–46 (Tex.Crim.App.1999).

■ Accordingly, a trial court is within its discretion to exclude prior violent acts if the victim's conduct was plainly

aggressive and no explanation is necessary to show that the defendant reasonably feared for his life. *See Torres,* 71 S.W.3d at 762. *Compare Thompson,* 659 S.W.2d at 653–54 (finding that defendant was entitled to establish victim's violent character to explain his ambiguously aggressive conduct of walking toward defendant with arms outstretched) *with Reyna,* 99 S.W.3d at 347 (holding that trial court did not err in excluding proffered testimony about victim's prior violent acts because defendant's account of victim's conduct during altercation with defendant consisted of unambiguous acts of aggression and violence that needed no explanation—victim allegedly flashed gun at defendant and allegedly shot him first) *and London v. State,* 325 S.W.3d 197, 206 (Tex.App.-Dallas 2008, pet. ref'd) (concluding that trial court did not err in excluding victim's violent past— gang affiliation and terrorization of neighborhood—because victim allegedly shot at defendant's car, and his doing so was unambiguous act of aggression and violence that needed no explanation).

Here, Smith testified that Hawkins pulled a knife and attempted to stab him first—both unambiguous acts of aggression and violence that need no explanation. *See Reyna,* 99 S.W.3d at 347; *London,* 325 S.W.3d at 206. Because of the unambiguous nature of Hawkins's alleged conduct, we conclude that the trial court was within its discretion to exclude the evidence as offered solely to show character conformity. *See* TEX.R. EVID. 404(b); *Torres,* 71 S.W.3d at 762.

*Harm Analysis*

 Even if we were to assume the trial court erred in excluding the proffered testimony, we would conclude that any error was harmless. Exclusion of evidence does not result in reversible error unless the exclusion affects a substantial right of the defendant. *Alexander v. State,* 137 S.W.3d 127, 130 (Tex.App.-Houston [1st Dist.] 2004, pet. ref'd) (stating that erroneous admission or exclusion of evidence does not result in reversible error unless it affects substantial right of accused); *see also* TEX.R.APP. P. 44.2(b). We must assess, from the context of the error, whether the judgment requires reversal because the error affected appellant's substantial rights. *See Johnson v. State,* 43 S.W.3d 1, 5 (Tex.Crim.App.2001). Error affects a substantial right when it has a substantial and injurious effect or influence in determining the jury's verdict. *See id.* at 4. When we assess the likelihood that the jury's decision was adversely affected by the error, we consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the error, and how it might be considered in connection with other evidence in the case. *Motilla v. State,* 78 S.W.3d 352, 355 (Tex. Crim.App.2002).

Because it is countered by the direct evidence that the trial court admitted, we have fair assurance here that any error made in excluding Hawkins's earlier stabbing incident involving Keisha and Terrell did not have a substantial and injurious effect or influence in determining the jury's verdict. *See Alexander,* 137 S.W.3d at 130; *see also Vega v. State,* 898 S.W.2d 359, 363 (Tex.App.-San Antonio 1995, pet. ref'd) (holding that although evidence of "bad blood" between defendant's gang and the complainant's gang was relevant to defendant's state of mind at time of murder, trial court's erroneous exclusion of evidence was harmless beyond reasonable doubt because record was replete with testimony concerning ill feelings between defendant and complainant and two gangs). Smith offered other direct evidence that Hawkins was the first aggressor, that he

reasonably believed he was in danger during the altercation with Hawkins, and that the force he used was immediately necessary to protect his life. Smith, along with two other witnesses, testified that Hawkins initiated the fight by grabbing Smith's steering wheel. Also, Smith said that Hawkins punched him several times in the face. He stated that he fought back only because it was necessary to protect the two women and the child in his car. Smith claimed he used his knife only after Hawkins attempted to stab him in his stomach and was about to stab his neck with the knife. He testified that he stabbed Hawkins because he wanted to get away from him and was scared for his life. Keisha too testified that Hawkins had a knife. Finally, Smith stated that Hawkins was a very violent and aggressive person while he lived with him. However, the State offered testimony and physical evidence that undermined Smith's defensive claims.

The jury chose to reject Smith's and his witnesses' claims that he acted in self-defense and defense of third party, as was its province. *See Cain v. State*, 958 S.W.2d 404, 408–09 (Tex.Crim.App.1997) (indicating that jury has sole province to decide what weight is to be given to contradictory testimony as it turns on evaluation of credibility and demeanor). We hold that the trial court's exclusion of Hawkins's prior violent acts did not substantially injure Smith's rights, and the error, if any, was harmless.

### KEISHA DUPREE'S OPINION TESTIMONY

In his third issue, Smith contends that the trial court abused its discretion in sustaining the prosecutor's objections to Keisha's opinion that Hawkins was a violent person. The relevant testimony is as follows:

DEFENSE COUNSEL: In your time period, I guess December, January, February, of living with Mr. Hawkins, were you able to establish an opinion about his character for being a peaceful or violent person? Were you able to develop an opinion?

KEISHA DUPREE: Yes, I did.

DEFENSE COUNSEL: What was your opinion?

KEISHA DUPREE: My opinion was that he could be violent any given time if approached the wrong way.

PROSECUTOR: Objection, Your Honor, nonresponsive.

TRIAL COURT: Sustained.

DEFENSE COUNSEL: Either the word "peaceful" or "violent," what was your opinion?

PROSECUTOR: Objection Your Honor, asked and answered.

TRIAL COURT: Sustained.

On appeal, Smith argues that the trial court incorrectly sustained the State's objection to Keisha's answer to defense counsel's first question regarding her opinion of Hawkins because it was a direct response to the question posed. Also, according to Smith, the second question regarding her opinion of Hawkins's character merely sought to simplify the inquiry and remedy Keisha's nonresponsive answer.

Assuming that the trial court abused its discretion in sustaining the State's objections, we find no reversible error. Exclusion of evidence does not result in reversible error unless the exclusion affects a substantial right of the defendant. *Alexander*, 137 S.W.3d at 130; *see also* Tex.R.App. P. 44.2(b). Generally, no harm results when a jury is not instructed to disregard a witness's answer after an objection is sustained. *See Johnson v. State*, 925 S.W.2d 745, 750 (Tex. App.-Fort Worth 1996, pet. ref'd); *Rodri-*

*guez v. State*, 903 S.W.2d 405, 410 (Tex. App.-Texarkana 1995, pet. ref'd); *see also Wiltz v. State*, 827 S.W.2d 372, 374 (Tex. App.-Houston [1st Dist.] 1992), *rev'd on other grounds*, 863 S.W.2d 463 (Tex.Crim. App.1993).

Here, the error did not affect a substantial right of Smith. *See Alexander*, 137 S.W.3d at 130. Keisha answered the question whether Hawkins was a peaceful or violent person. She stated that he could be violent if a person approached him in the wrong manner. The State objected to the answer as non-responsive, but did not seek a limiting instruction. Because the trial court did not instruct the jury to disregard Keisha's answer, the answer became part of the general evidence, and no harm resulted from sustaining the objection. *See Johnson*, 925 S.W.2d at 750; *Rodriguez*, 903 S.W.2d at 410; *see also Wiltz*, 827 S.W.2d at 374. As Smith points out, the second question was merely a simplified version of the first one. Therefore, no harm resulted from the trial court sustaining the State's objection to the second question because Keisha's answer to the first one was already part of the evidence before the jury. We also note that this testimony is cumulative of other evidence that Hawkins was a violent person. Smith testified that Hawkins was a very violent and aggressive person while he lived with him.

## EXCLUSION OF HAWKINS'S TATTOOS

In his fourth issue, Smith maintains that the trial court deprived him of his constitutional right to due process of law and his right to confront the witnesses against him when it prohibited him from offering evidence that Hawkins had tattoos depicting acts of violence and the words "CRIP LIFE" and "GANGSTAFIED." He argues the erroneous exclusion was a consti-

tutional error because the tattoo evidence formed a "Vital portion" of his self-defense and sudden passion theories. *See Potier v. State*, 68 S.W.3d 657, 665 (Tex.Crim.App. 2002) (holding that rulings excluding evidence might rise to level of constitutional violation when trial court erroneously excludes otherwise relevant, reliable evidence which forms such vital portion of the case that exclusion effectively precludes defendant from presenting defense).

During the trial, the State asked the trial court to exclude evidence of Hawkins's tattoos depicting the words "CRIP LIFE" and "GANGSTAFIED" by redacting the autopsy report, on the basis that the tattoos were irrelevant and more prejudicial than probative within the meaning of Texas Rule of Evidence 403. The trial court excluded evidence of the words depicted in the tattoos under Rule 403, but allowed the jury to consider evidence on the existence and number of tattoos Hawkins had. Further, the trial court noted that it would revisit its ruling if the content of the tattoos became relevant. After Smith testified that Hawkins was the first aggressor, defense counsel again sought to introduce evidence of the words depicted in the tattoos, and the trial court excluded the words.

*Standard of Review*

We review the court's Rule 403 ruling for an abuse of discretion. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex.Crim. App.2005). Evidence is relevant if it has any tendency to make the existence of any fact of consequence to the determination of the action more or less probable than it would be without the evidence. TEX.R. EVID. 401. There is a presumption of admissibility of relevant evidence. *See* TEX.R. EVID. 402; *Erazo v. State*, 144 S.W.3d 487, 499 (Tex.Crim.App.2004) (Cochran, J., concurring). The trial court may exclude relevant evidence under Rule

403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX.R. EVID. 403. When a trial court balances the probative value of the evidence against the danger of unfair prejudice, a presumption exists that favors the evidence's probative value. *Feldman v. State*, 71 S.W.3d 738, 754–55 (Tex.Crim. App.2002). The relevant criteria for determining whether the prejudice of admitting the evidence substantially outweighs the probative value include the following: (1) the probative value of the evidence; (2) the potential the evidence has to impress the jury in an irrational but nevertheless indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence to prove a fact of consequence. *Mechler*, 153 S.W.3d at 440–41.

■ Evidentiary rulings rarely rise to the level of denying the fundamental constitutional right to present a meaningful defense. *Potier*, 68 S.W.3d at 663. Rulings excluding evidence might rise to the level of a constitutional violation if: (1) the evidentiary rule categorically and arbitrarily prohibits the defendant from offering otherwise relevant, reliable evidence that is vital to his defense; and (2) a trial court's clearly erroneous ruling excluding evidence that forms such a vital portion of the case effectively precludes the defendant from presenting a defense. *Id.* at 659–62; *Wiley v. State*, 74 S.W.3d 399, 405 (Tex.Crim.App.2002). In the first scenario, "the constitutional infirmity is in the arbitrary rule of evidence itself." *Wiley*, 74 S.W.3d at 405. In the second scenario, "the rule itself is appropriate, but the trial court erroneously applies the rule to exclude admissible evidence to such an extent that it effectively prevents the defendant from presenting his defensive theory." *Id.*

*Analysis*

■ Gang membership is admissible to show bias, motive, or intent, or to refute a defensive theory. *See Tibbs v. State*, 125 S.W.3d 84, 89 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd) (citations omitted); *see also Vasquez v. State*, 67 S.W.3d 229, 239–40 (Tex.Crim.App.2002) (holding defendant's Mexican Mafia affiliation admissible to show defendant's motive for killing victim); *King v. State*, 29 S.W.3d 556, 565 (Tex.Crim.App.2000) (holding extensive evidence of appellant's hatred for African–Americans, including his "graphic" tattoos and drawings was evidence that appellant had motive to kill complainant because of complainant's race); *Williams v. State*, 974 S.W.2d 324, 331 (Tex.App.-San Antonio 1998, pet. ref'd) (holding evidence of defendant's gang affiliation admissible to establish motive for robbery); *Brosky v. State*, 915 S.W.2d 120, 134–35 (Tex.App.-Fort Worth 1996, pet. ref'd) (holding no error in admitting racist propaganda as evidence that murder was committed by combination animated by white supremacist beliefs); *McKnight v. State*, 874 S.W.2d 745, 747 (Tex.App.-Fort Worth 1994, no pet.) (holding defendant's and witness's gang membership admissible to show defendant's bias).

■ Here, the words "CRIP LIFE" and "GANGSTAFIED" indicate a possible gang affiliation. Neither party, however, adduced evidence that the altercation leading to Hawkins's death was gang-related. Hawkins's tattoos and possible gang affiliation did not explain the altercation. Under Smith's version of the events, the altercation arose out of a dispute between Smith and Hawkins concerning their shared apartment. Further, the record does not demonstrate that Smith was

aware of the tattoos or that Hawkins's possible gang affiliation affected Smith's state of mind during the altercation. Accordingly, the trial court could reasonably have concluded that the words had little, if any, probative value. *See Macias v. State,* 959 S.W.2d 332, 339 (Tex.App.-Houston [14th Dist.] 1997 pet. ref'd) (finding evidence of defendant's gang affiliation not relevant under Texas Rule of Evidence 401 because membership was not part of reason for murder or part of explanation for why murder occurred as it did); *see also Wachholtz v. State,* 296 S.W.3d 855, 858 (Tex.App.-Amarillo 2009 pet. ref'd) (holding that trial court did not err in excluding evidence of victim's brother's gang tattoos because, although brother was at crime scene, no evidence existed that defendant saw anyone with visible gang tattoos or knew about anyone present having gang tattoos).

The use of the words depicted in the tattoos to show Hawkins was a bad person and that he acted in conformity with his bad character during the altercation with Smith also weighed against admission, as this use of the tattoos would be improper. *See id.; see also Galvez v. State,* 962 S.W.2d 203, 206 (Tex.App.-Austin 1998, pet. ref'd) ("[G]ang membership is highly inflammatory character evidence likely to cause an individual to be convicted for being a bad person apart from sufficient indicia of guilt regarding this particular crime."); *Barlow v. State,* 175 S.W.3d 839, 844 (Tex.App.-Texarkana 2005, pet. ref'd) (finding that evidence of four witnesses' gang affiliation was unfairly prejudicial).

Because the words depicted in the tattoos have little probative value under the facts of this case and presented a danger of unfair prejudice, we conclude that the trial court did not abuse its discretion in excluding the evidence under Rule 403. *Mechler,* 153 S.W.3d at 440–41. Because

the trial court did not erroneously exclude the evidence, no constitutional error occurred. *See Potier,* 68 S.W.3d at 663. We overrule Smith's fourth issue on appeal.

### Conclusion

We hold that the evidence is sufficient to support Smith's conviction, and the evidence is sufficient to support the jury's negative finding on the issue of sudden passion. We further hold that none of Smith's challenges to the trial court's evidentiary rulings warrants reversal. Finally, the trial court did not deprive Smith of due process or his right to confront the witnesses. We therefore affirm the judgment of the trial court.