In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-23-00347-CR
_____

MAX LEE KEATH, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 252nd District Court
Jefferson County, Texas
Trial Cause No. F22-41225

**MEMORANDUM OPINION**

Appellant Max Lee Keath appeals his conviction for murder. *See* Tex. Penal Code Ann. § 19.02. In his sole issue, Keath contends the evidence was insufficient to find him guilty based upon self-defense. We affirm the trial court's judgment.

1

# BACKGROUND

A grand jury indicted Keath for intentionally and knowingly causing the death of Charles[1] by striking Charles with a motor vehicle. *See id.* The trial court conducted a jury trial. Officer Reginald Boseman of the Beaumont Police Department testified that when he responded to an early morning call on October 30, 2022, about a person possibly being struck by a vehicle at an apartment complex, he found the victim lying on the pavement unresponsive next to a wooden fence at the back of the complex. Boseman testified that the victim had a "death rattle[,]" and the back of his head was "almost completely missing." Initially, due to the nature of the victim's head injury, Boseman believed he had been shot, but later determined that he had been struck by a vehicle, and the driver had left the scene. Boseman explained that he did not find a gun on the victim's person or at the scene. The jury viewed the video from Boseman's body camera and pictures he took at the scene. On cross-examination, Boseman testified he spoke to a witness who lived at the complex and reported hearing an argument and seeing a Chevrolet or GMC truck speeding in and out of the complex.

---

[1] We refer to the victim and civilian witnesses by pseudonyms to conceal their identities. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process[.]").

Detective Chris Raymer of the Beaumont Police Department testified that he was called to the scene, met with witnesses, and learned Charles was the victim. Raymer testified there were 9-1-1 calls made the morning of the incident concerning this case, and the jury listened to the calls. Raymer testified that Charles made the first call, during which he complained that people in a residence behind the complex were disturbing the peace and being loud in their jacuzzi. Kim made the second 9-1-1 call and reported there was a "crazy man" behind her fence screaming at them from the complex, and then she reported that she saw someone run over the man. A neighbor from the complex made the third 9-1-1 call and reported that one of her neighbors was arguing with people who lived in a residence behind the complex when a man drove to the complex and ran over her neighbor. During the fourth 9-1-1 call, Kim reported that it started with an argument across the fence and then someone came out of nowhere in a light blue truck and ran the man over.

Raymer testified that he interviewed Kim and her daughter Kendra at the police department, and they assisted him in identifying Keath as the suspect. Raymer explained he went to Keath's residence, located a dark gray truck matching the description of the truck involved in the incident concealed behind Keath's residence instead of the front parking area, and interviewed Keath at the police station. The jury viewed Keath's recorded interview, during which Keath admitted to striking Charles with his vehicle.

3

During his interview, Keath explained that he went to the complex to confront Charles and "whip his ass" for calling the ladies names and saying he had a gun, which Keath believed and did not take lightly. Keath stated that when Charles heard his truck, Charles turned around and pulled up his shirt, leading Keath to believe that Charles had a gun. Keath explained that that at that point, he "gassed" his truck and hit Charles. According to Keath, he freaked out and left the scene, first going to Kim's to get his belongings and then to his house. Keath explained that he parked his truck in his back yard behind a building, which he did half the time. Keath admitted that he screwed up and made the wrong choice and had to pay the consequences because when you do the crime you do the time.

Raymer testified that Charles died at the hospital and that Keath caused his death by intentionally striking Charles with his vehicle. Raymer explained that they did not find any weapon on Charles or at the scene. Raymer also explained that video footage from a ring doorbell, which was later admitted into evidence, corroborated that Keath left Kim's house twice in his truck on the morning of the incident.

On cross-examination, Raymer testified that Keath intended to go to the complex on two occasions but only pulled in once. Raymer testified that Keath said that he went to the complex the second time because Charles said he had a gun. Raymer explained that when someone tells him they have a gun he would take that seriously. On redirect, Raymer explained that someone saying they have a gun is

4

different than saying they are going to get a gun, because in the second instance the gun is not readily available and there is no imminent threat.

Ian, Kim's stepson, testified that he was in the hot tub at Kim's house with Kim, Keath, and Kendra, and Kendra's daughter, when Charles came up to the back fence and told them to be quiet. Ian explained that he, Kim, and Kendra had a conversation with Charles that included cussing on both sides. Ian testified that the conversation did not make him fear for his life, and Charles never tried to climb the fence. Ian explained that he, Kim, and Kendra hopped up on the runner of the fence where they could see Charles, and he denied they were trying to get into a physical disturbance with him. Ian testified that Charles did not threaten them with a firearm or that he would get a firearm.

Ian testified that during the argument, he saw a truck "creeping" in without its headlights on and come to a rolling stop, and at that point, he jumped down from the fence because he thought there was going to be a drive-by shooting. Ian heard tires screeching and Kim tell the 9-1-1 operator on the phone that Charles had been hit by a truck. At that point, Ian went inside with Kendra's daughter and Kendra and Kim went to help Charles, and Keath was not in the backyard.

Ian testified that when he saw Keath pull up to the house in the same truck that hit Charles, he realized Keath hit Charles. Ian explained that Keath appeared

"blank[]" and did not say anything, and just got his cooler from the backyard, tried to give him a "fist pump," and left.

Kim testified she was in the hot tub in her back yard with Ian, Kendra, Kendra's daughter, and Keath when Charles yelled at them over the fence to shut their dog up or he was going to cut his throat. Kim testified that the conversation with Charles escalated but she was not fearful. Kim explained she got on the fence so she could see Charles, who threatened to call the police because they were loud, and she called the police because he was harassing them. Kim explained that Ian and Kendra also got on the fence, but Keath did not. Kim testified that Charles threatened that he would "go get his 9 and take care of this[,]" but never tried to climb the fence or get to them, and she did not see Charles with any weapons. Kim believed that Charles would have to go somewhere to get his gun. At that point, Kim told Kendra to go get her purse, which contained her gun, but she never got her gun, and Charles never left the fence. Kim explained that she was on the phone with the 9-1-1 operator when she saw a truck hit Charles and leave the scene. Kim testified that Charles did not approach the truck, and he did not have a weapon or do anything to provoke the driver of the truck. Kim explained that she went to assist Charles because she is a nurse.

On cross-examination, Kim testified that during the argument, Charles stated that he was going to get his gun a couple of times. Kim explained that when Charles

6

said he was going to get his gun and take care of this, she believed he meant he was going to shoot them. Kim did not know that Keath left the house during the argument, and Keath never threatened Charles. On redirect, Kim explained that she did not think Charles had a gun on his person, and she would have been afraid if Charles had left and got a gun, but he never did. Kim never talked to Keath after Charles was hit by the truck.

Kendra testified that she was drinking in the hot tub at Kim's house when Charles yelled at them to shut their dog up and quit being loud. Kendra explained she, Kim, and Ian yelled back and forth with Charles over the fence, but Keath did not interact with Charles. Kendra testified that she was standing on the fence when Charles said he "was gonna go get his 9." At that point, Kendra got off the fence, and a few minutes later, she heard the truck hit Charles. Kendra explained that when she and Kim went to help Charles, Keath was standing in the grass in the front yard by his truck. According to Kendra, Keath just asked where his phone was and went inside the house. Kendra testified Charles did not try to climb the fence or lay a hand on them and she did not believe Charles had a gun on his person. Kendra also testified that Charles did not threaten Keath.

One of Charles's neighbors who heard the argument, testified that she heard Charles threaten to go back to his apartment and get his gun, but Charles made it clear the gun was not on him and never left the scene.

Dr. Alex John, a forensic pathologist, testified that he reviewed Charles's autopsy and agreed with the finding that Charles's cause of death was skull fractures with brain lacerations due to blunt force trauma of head. Dr. John also agreed that the manner of death was a homicide.

Keath's counsel moved for a directed verdict, arguing the State failed to prove Keath intended to kill Charles and that there was sufficient evidence of self-defense. The trial court denied the motion. The jury found Keath guilty of murder and assessed his punishment at forty years of confinement.

**ANALYSIS**

In his sole issue, Keath contends the evidence was insufficient to find him guilty based on his assertion of self-defense. We review the sufficiency of the evidence supporting a jury's rejection of a self-defense claim under the *Jackson v. Virginia* standard. *Braughton v. State*, 569 S.W.3d 592, 608–09 (Tex. Crim. App. 2018); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Smith v. State*, 355 S.W.3d 138, 144 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). In evaluating whether the evidence is sufficient, we review all the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact would have found the essential element of the offense beyond a reasonable doubt and would have found against the defendant on the self-defense issue beyond a reasonable doubt. *Braughton*, 569 S.W.3d at 609 (citing *Saxton v. State*, 804 S.W.2d 910, 914 (Tex.

8

Crim. App. 1991). We give deference to the jury to resolve any conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the facts. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We treat direct and circumstantial evidence equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The jury is entitled to judge the credibility of the witnesses and can choose to believe all, some, or none of the witnesses' testimony. *Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020).

A person commits murder by "intentionally or knowingly" causing the death of an individual. Tex. Penal Code Ann. § 19.02(b)(1). A person acts "intentionally" with respect to the nature or a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. *See id.* § 6.03(a). A person acts "knowingly" with respect to the nature of his conduct when he is aware of the nature of his conduct, and a person acts "knowingly" with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b).

Section 9.31 of the Penal Code provides that a person is justified in using force against another when and to the degree that person reasonably believes the force is immediately necessary to protect himself against another person's use or attempted

use of unlawful force. *Gamino v. State*, 537 S.W.3d 507, 510 (Tex. Crim. App. 2017); *see* Tex. Penal Code Ann. § 9.31(a). A person is justified in using deadly force if he would be justified in using force under section 9.31, and he reasonably believed that deadly force was immediately necessary to protect himself against another's use or attempted use of deadly force. *Gamino*, 537 S.W.3d at 510; *see* Tex. Penal Code Ann. § 9.32(a). The Penal Code defines the term "reasonable belief," to mean a "belief that would be held by an ordinary and prudent man in the same circumstances as the actor." Tex. Penal Code Ann. § 1.07(42). A person's belief that deadly force was immediately necessary is presumed to be reasonable if the person did not provoke the person against whom the force was used, was not otherwise engaged in a criminal activity other than a Class C misdemeanor, and knew or had reason to believe that the person against whom the force was used: (1) unlawfully and with force entered or attempted to enter the actor's habitation, vehicle, or place of business; (2) unlawfully and with force removed or attempted to remove the actor from his habitation, vehicle, or place of business; or (3) was committing or attempting to commit aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery. *Id.* § 9.32(b); *see Lozano v. State*, 636 S.W.3d 25, 32 (Tex. Crim. App. 2021) (A defendant must subjectively believe that another person used or attempted to use . . . deadly force . . . against the defendant and that the defendant's use of . . . deadly force in response was

10

immediately necessary . . . . Second, a defendant's subjective belief must be reasonable).

A defendant bears the burden to produce evidence supporting a claim of self-defense, and if met, the burden shifts to the State to disprove the defense. *See Braughton*, 569 S.W.3d at 608. The defendant's burden requires the production of evidence to support a claim of self-defense, but the State's burden only requires it to prove its case beyond a reasonable doubt. *Id.* at 608–09 (citing *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003)). A jury's guilty verdict is an implied rejection of a defendant's self-defense claim. *Id.* at 609.

The jury considered Keath's recorded statement and rejected Keath's claim of self-defense. The jury's decision to reject Keath's claim of self-defense hinges on the credibility of the witnesses and the weight the jury gives to their testimony. *See Smith*, 355 S.W.3d at 146 (citing *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991)). Keath's recorded statement does not conclusively prove a self-defense claim. *See id.* The evidence shows that Keath left Kim's residence, entered his truck, and drove from the residence to the alley behind the complex. He presented no evidence that the use of force was immediately necessary to prevent the use of deadly force against himself. *See Lozano*, 636 S.W.3d at 32. In fact, other witnesses testified that Charles did not have a gun while in the alley and that he never left the alley before being struck by Keath.

Here, the jury chose not to believe Keath acted in self-defense. Considering the other evidence presented at trial, Keath's recorded statement does not render the evidence insufficient to support the jury's verdict. *See Smith*, 355 S.W.3d at 146. The other evidence, including the State's witnesses, the physical evidence, Keath's flight from the scene and decision to park his truck behind his house, and Keath's admission that he made the wrong choice and had to suffer the consequences, all undermined Keath's self-defense claim. Moreover, Keath's flight from the scene is circumstantial evidence of his guilt. *See id.* at 147.

Additionally, Boseman testified that he did not find a gun on Charles's person or at the scene. The evidence does not support that any of the circumstances listed in section 9.32(b) of the Penal Code existed in this case, so there is no presumption that Keath's belief that deadly force was immediately necessary was a reasonable belief. *See* Tex. Penal Code Ann. § 9.32(b); *Lozano* , 636 S.W.3d at 32. We conclude that the jury rationally could have found that each element of the charged offense was proven beyond a reasonable doubt, and rationally could have rejected Keath's claim of self-defense. *See Jackson*, 443 U.S. at 319; *Braughton*, 569 S.W.3d at 608–09. Accordingly, we hold that the evidence is sufficient to support Keath's conviction. We overrule his sole issue and affirm the trial court's judgment.

AFFIRMED.

JAY WRIGHT
Justice

Submitted July 1, 2025
Opinion Delivered July 9, 2025
Do Not Publish

Before Golemon, C.J., Johnson and Wright, JJ.