

# NUMBERS 13-11-00657-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**GLENN EDWARD CHAMPAGNE,**             **Appellant,**

**v.**

**THE STATE OF TEXAS,**             **Appellee.**

---

### On appeal from the 260th District Court
### of Orange County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Benavides, Vela, and Perkes
### Memorandum Opinion by Justice Perkes

Appellant, Glenn Edward Champagne, appeals his conviction for criminal

nonsupport, a state-jail felony.[1]  *See* TEX. PENAL CODE ANN. § 25.05(a) (West 2011).

Following a jury trial, appellant was found guilty of three counts of failure to pay child

support.  For each count, appellant was sentenced to eighteen months of confinement in

---

[1]  Pursuant to a docket-equalization order issued by the Supreme Court of Texas, this case is before us on transfer from the Ninth Court of Appeals in Beaumont, Texas.  *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

the Texas Department of Criminal Justice, State Jail Division. The three sentences were ordered to run concurrently.

By two issues, appellant argues that the evidence is legally and factually insufficient to support the jury's implied negative finding on his affirmative defense of inability to pay support. *See id.* § 25.05(d). We affirm.

## I. FACTUAL BACKGROUND

Appellant and Brandi Champagne divorced in December 1996. At the time, they had one child together who was born during their marriage. Pursuant to the terms of their divorce decree, appellant was ordered to pay child support on the first day of each month. After they divorced, appellant and Brandi had a second child together and in March 2005, an order was entered in a suit affecting the parent-child relationship. That order modified appellant's child-support obligation and required appellant to pay $350 per month in child support on the first day of every month.

In civil contempt proceedings for failure to pay child support, appellant was sentenced in December 2008 to serve 180 days in the Jefferson County Jail, with time credit for time served starting in November 2008. In July 2010, appellant was indicted in this case for criminal nonsupport for failure to pay child support on January 1, 2009 (count one), July 1, 2009 (count two), and December 1, 2009 (count three).

At trial, the State presented testimony from Brandi Champagne and Karl Pottkotter. Pottkotter was a regional field investigator with the Texas Attorney General's Office and he was assigned to work on appellant's case. Pottkotter testified that the attorney general's office initiates a criminal nonsupport proceeding after civil efforts to enforce a child-support obligation fail. Pottkotter testified that appellant failed to pay

2

child support on the dates alleged in the indictment. Pottkotter admitted that he did not know whether appellant was incarcerated on January 1, 2009, the date alleged in count one of the indictment. He also testified that people may still have access to money to pay child support while in jail and that he believed a person is obligated to pay child support whether or not they are incarcerated. Pottkotter admitted on cross-examination that he could be wrong that a person is obligated to pay child support while incarcerated, but expressed confidence that a person is obligated to pay child support even while incarcerated.

Pottkotter testified that the attorney general's office generally inquires about an obligor's possible inability to pay. Pottkotter explained to the jury that his file contained no evidence that appellant had a physical or mental disability that would render him unable to pay child support. On cross-examination, Pottkotter conceded that the attorney general's office makes its inability-to-pay determination early on in a case, and that he started working on appellant's case after such a determination would have been made. Pottkotter did not have first-hand knowledge of whether his predecessor on the case made an inability-to-pay determination concerning appellant.

Pottkotter testified to specific child-support payments appellant made between October 1, 2006 and August 2007. These payments ranged in amount from a low of $138.34 to a high of $775, with the majority of the payments being $500 or more. During this time period, appellant often made more than one payment per month. However, between December 1, 2008 and January 31, 2009, appellant paid no child support.

Brandi Champagne testified that she had no relationship with appellant between 2006 and 2010 and admitted she could not say what he was like in that time period. She

3

testified that during the time she knew him, she never saw any signs of a physical or mental limitation or handicap. Brandi testified that after they divorced in 1996, appellant worked at Elton Mire Cabinet Shop in Groves, Texas, which he owned and operated for several years. Appellant did cabinetry work. After that shop closed, according to Brandi, appellant owned and operated a second cabinet shop for two or three years, and that shop later closed.

Appellant presented testimony from his sister Lynnette McVey. McVey testified appellant was incarcerated in the Jefferson County Jail for six months starting in December 2008, so that he would have been incarcerated at the time alleged in the first count of the indictment (January 1, 2009). After his release from jail in 2009, appellant lived with McVey and did not work because he was in a "very, very deep depression." According to McVey, appellant could not get out of bed and sought treatment at "M.H.M.R." McVey testified appellant "was going to be tested for the fungus of the lungs of being in the cabinet shop" and "[w]e've had major prostate trouble. He's had his shoulder, the rotor (sic) cuff injured." McVey testified appellant was diagnosed at "M.H.M.R." with depression. Appellant presented no medical records or expert testimony to support his medical claims. McVey testified that due to a subsequent incarceration related to child support (starting in February 2011), appellant never finished the testing necessary to determine whether he would qualify for disability benefits.

McVey testified that while appellant lived with her, he owned nothing and had very little money. He did not have a bank account or a trust account. She described appellant as destitute and testified he would have been homeless but for her help during this time period. McVey admitted on cross-examination that despite his depression, it

4

would have been possible for appellant to hold a simple job while he was living with her such as being a greeter at Wal-Mart.

McVey testified that when appellant worked, he had financial savings, but it was not kept in a bank account. He would give it to McVey and another sister to make child-support payments. McVey testified that the money appellant used to make child-support payments between November 2006 and August 2007 was a "mixture" of appellant's money, McVey's money, and the other sister's money.

## II. ANALYSIS

### A. Legal Sufficiency

By his first issue, appellant argues the evidence is legally insufficient to support the jury's implied negative finding on his affirmative defense that he was unable to pay child support. Appellant characterizes the record as devoid of evidence of his ability to pay child support.

An individual commits criminal nonsupport if the individual "intentionally or knowingly fails to provide support for the individual's child younger than 18 years of age." TEX. PENAL CODE ANN. § 25.05(a). The ability to pay child support is not an element of the offense. *See id.*; *Lyons v. State*, 835 S.W.2d 715, 718 (Tex. App.—Texarkana 1992, pet. ref'd). "It is an affirmative defense to prosecution under this section that the actor could not provide support for the actor's child." TEX. PENAL CODE ANN. § 25.05(d). The defendant carries the burden of proving this affirmative defense by a preponderance of the evidence. *See Howard v. State*, 145 S.W.3d 327, 329 (Tex. App.—Fort Worth 2004, no pet.).

When a defendant challenges the legal sufficiency of the evidence to support a

5

jury's negative finding on an affirmative defense for which the defendant has the burden of proof, we evaluate the jury's negative finding by examining the record for evidence that supports the jury's finding while ignoring all evidence to the contrary.[2] *Cleveland v. State*, 177 S.W.3d 374, 387–88 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd); *see also Cover v. State*, 913 S.W.2d 611, 619 (Tex. App.—Tyler 1995, pet. ref'd). If no evidence supports the negative finding, we then examine the entire record to determine whether the affirmative defense is established as a matter of law. *Cleveland*, 177 S.W.3d at 387. In reviewing the record, we defer to the fact finder's determination of the credibility of the witnesses and the weight to give the evidence. *Smith v. State*, 355 S.W.3d 138, 147–48 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing *Cleveland,* 177 S.W.3d at 388–89).

The record contains evidence that supports the jury's implied negative finding on appellant's defense that he was unable to provide support on January 1, 2009, July 1, 2009, December 1, 2009. Even though the record shows appellant was incarcerated on January 1, 2009, the record also shows that in the past, appellant had paid child support while incarcerated. It also shows that appellant had cabinetry skills and in 2006 was employed by a construction business. Appellant's sister McVey conceded that even when appellant was very depressed in 2009, he could have held a simple job such as working at Wal-Mart.

---

[2]  While the *Jackson v. Virginia* standard applies to appellate review of the sufficiency of evidence to show elements the State is required to prove beyond a reasonable doubt, it does not apply to appellate review of whether a criminal defendant met his burden to prove an affirmative defense by a preponderance of the evidence. *See Brooks v. State,* 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)); *Smith v. State*, 355 S.W.3d 138, 147–48 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

McVey testified that when appellant worked, he had savings, though he did not keep it in a bank account, and would make child support payments from his savings. The record shows that as recently as August 2007, appellant worked and made significant child-support payments. In 2009, after his release from the Jefferson County Jail, appellant was living with his sister and she provided housing and even provided him financial assistance in making child support payments. Particularly in light of his sister's assistance and appellant's ability to work, there is some evidence in the record to support the jury's implied negative finding on appellant's affirmative defense of inability to pay support. We need not reach the second step of the legal-sufficiency analysis, whether appellant's affirmative defense was established as a matter of law. *See Howard v. State*, 145 S.W.3d 327, 335 (Tex. App.—Fort Worth 2004, no pet.). By its verdict, the jury clearly found McVey's testimony indicating ability to pay credible. *See id.* (discussing testimony that supported jury's implied finding that defendant did not prove inability to provide support); *see also Woods v. State*, No. 06-05-00150-CR, 2006 WL 1389581, at **1–2 (Tex. App.—Texarkana May 23, 2006, no pet.) (mem. op., not designated for publication) (holding evidence that defendant, who was able to work and eligible for rehire by a previous employer, but did not seek rehire, was legally sufficient to support jury's rejection of inability-to-pay defense). Appellant's first issue is overruled.

## B. Factual Sufficiency

By his second issue, appellant argues the evidence is factually insufficient to support the jury's implied negative finding on his affirmative defense that he was unable to pay child support. We disagree.

The factual sufficiency standard announced in *Meraz v. State* is appropriate for

7

appellate review of affirmative defenses on which the defendant has the burden of proof by the preponderance of the evidence. *See Brooks v. State,* 323 S.W.3d 893, 924 n.67 (Tex. Crim. App. 2010) (plurality op.) (Cochran, J., concurring); *see also Meraz v. State,* 785 S.W.2d 146, 154–55 (Tex. Crim. App. 1990) (holding that the proper standard for review of factual sufficiency challenges to negative finding on issue that defendant had to prove by preponderance of the evidence is not *Jackson v. Virginia*[3] standard); *Zuniga v. State,* 144 S.W.3d 477, 482 (Tex. Crim. App. 2004) (holding that *Meraz* standard is suitable for sufficiency reviews regarding affirmative defenses because burden of proof on defendant is preponderance of evidence), *overruled on other grounds by Watson v. State*, 204 S.W.3d 404, 416–17 (Tex. Crim. App. 2006); *Smith*, 355 S.W.3d at 148. Under *Meraz,* we consider whether the judgment is so against the great weight and preponderance of the evidence so as to be manifestly unjust. *Meraz*, 785 S.W.2d at 154–55. We review all of the evidence neutrally, but we do not intrude on the factfinder's role as the sole judge of the weight and credibility given to any witness's testimony. *Cleveland,* 177 S.W.3d at 390–91.

While McVey testified that her brother was incarcerated on January 1, 2009, as noted above, the record also contains evidence that in the past he had made child-support payments while incarcerated and that when he worked he was able to save money and make payments from his savings. McVey's testimony that after his release from jail in 2009 appellant was unable to work because of his depression and health issues was contradicted by her own testimony that appellant could have performed simple, paid work. McVey apparently allowed appellant to live in her home at this time at

---

[3] *See Jackson,* 443 U.S. at 319.

no cost. Considering all the evidence in the record, and not intruding on the jury's role in weighing the evidence and judging the credibility of the witnesses, we cannot conclude that the judgment is against the great weight and preponderance of the evidence. *See Howard*, 145 S.W.3d at 336 (finding evidence factually sufficient to support rejection of defendant's inability-to-pay defense despite medical evidence of physical disability, where evidence was also admitted that defendant was "faking" disability); *Belcher v. State*, 962 S.W.2d 653, 660 (Tex. App.—Austin 1998, no pet.) (concluding evidence was factually sufficient to support rejection of inability-to-pay defense when there was some evidence "on each side of the question" including evidence that appellant failed to apply for employment with various local employers). It was within the jury's province to discredit McVey's testimony suggesting inability to pay. *See Belcher*, 962 S.W.2d at 660. Appellant's second issue is overruled.

## III. CONCLUSION

We affirm the trial court's judgment.

Gregory T. Perkes
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b)

Delivered and filed the
28th day of June, 2012.