**Opinion filed May 16, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00136-CR
_____

## JAMES ALBERT EDWARDS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 106th District Court**

**Dawson County, Texas**

**Trial Court Cause No. 10-7030**

## M E M O R A N D U M   O P I N I O N

The jury convicted James Albert Edwards of the state jail felony offense of theft. *See* TEX. PENAL CODE ANN. § 31.03(a), (b)(1), (e)(4)(D) (West Supp. 2012). Appellant elected to have the trial court assess his punishment. Appellant pleaded true to two enhancement allegations. The trial court found the enhancement allegations to be true, and it sentenced Appellant to confinement for a term of ten years and a $2,000 fine. We affirm.

## Background

A theft offense is a state jail felony if the value of the property stolen is less than $1,500 and if the defendant has been previously convicted two or more times of any grade of theft. PENAL § 31.03(e)(4)(D). In this case, the indictment alleged that Appellant unlawfully appropriated, by acquiring and otherwise exercising control over, six joints of steel tubing, of the value of $50 or more but less than $500, from the owner of the property, Dominga Hernandez, without her effective consent and with the intent to deprive her of the property. The indictment also alleged that Appellant had two prior theft convictions. At trial, the State presented evidence of Appellant's two prior theft convictions, and Appellant admitted that he had the prior convictions.

At trial, Appellant admitted that he took the six joints of steel tubing, which were also referred to as "pipe" during testimony. However, Appellant testified that he believed the pipe belonged to a man named Lupe Ramierez and that Lupe Ramirez asked him to move the pipe. Therefore, Appellant raised the defense of mistake of fact as to the owner of the property. *See* PENAL § 8.02 (West 2011). The trial court submitted mistake-of-fact instructions to the jury, including an instruction that "it is a defense to prosecution that a person through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for the commission of the offense." *See id.* § 8.02(a).

## Issue on Appeal

In his sole appellate issue, Appellant challenges the sufficiency of the evidence to support his conviction. Specifically, Appellant argues that the evidence was insufficient to establish that he intended to deprive the owner, Hernandez, of the pipe.

*Sufficiency of the Evidence*

We review the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Mistake of fact is a defense to prosecution under the Penal Code. PENAL §§ 2.03, 8.02 (West 2011). It is not an affirmative defense upon which the defendant bears the burden of proof. *See id.* § 2.04; *see also Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991) (distinguishing defensive claims upon which the State bears the burden of persuasion and affirmative defenses upon which the defendant bears the burden of proof); *see also Matlock v. State*, 392 S.W.3d 662 (Tex. Crim. App. 2013) (explaining legal and factual sufficiency standards of review that apply to a jury's rejection of an affirmative defense). Once a defendant produces some evidence that supports a mistake-of-fact defense, the State has the burden of persuasion to disprove the defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton*, 804 S.W.2d at 913–14; *see* PENAL § 2.03. The burden of persuasion does not require production of evidence. *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 913. Rather, the burden of persuasion requires only that the State prove its case beyond a reasonable doubt. *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 914; *Smith v. State*, 355 S.W.3d 138, 144 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). A jury's finding of guilty is an implicit finding against the defensive theory. *Zuliani*, 97 S.W.3d at

594. When an appellant's sufficiency claim involves the defense of mistake of fact, we must view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found against the appellant on the mistake-of-fact issue beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 914.

In conducting a sufficiency review, we are required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012); *Brooks*, 323 S.W.3d at 899.

Hernandez was employed by the Dawson County Adult Probation Office. On August 12, 2010, she went home during her lunch break from her job. As she drove by the alley that was behind her house, she saw a man loading pipe onto a trailer that was attached to a blue SUV. Hernandez testified that her husband had purchased the pipe from his employer. The pipe was located next to Hernandez's backyard fence, on the alley side of the fence. The pipe consisted of six joints of 2 7/8 inch steel tubing, each of which was about fifty feet long. Hernandez and her husband had agreed to give the pipe to their friend, Angel Acosta, in exchange for concrete work that he had done at their house.

Hernandez drove her car into her garage. She then made some phone calls in an effort to determine whether Acosta had arranged for the man in the alley to pick up the pipe for him. Acosta's sister-in-law told Hernandez that she did not believe that Acosta had made such an arrangement. Hernandez went into her backyard. At that time, the man who had been loading the pipe was gone. Hernandez knew that two local businesses purchased pipe. She first went to Brock Steel but did not see the blue SUV and trailer there. She then went to Goolsby Brothers Pipe & Steel Company, where she saw the blue SUV and trailer. Hernandez knew Appellant and saw that he was driving the SUV. Appellant

4

waved at Hernandez and then drove off. Hernandez testified that she did not give Appellant permission to take the pipe.

Hernandez talked with Royce Goolsby. She told him that Appellant had just taken the pipe from her house without her permission. Goolsby told Hernandez that he was going to find Appellant so that he could get his money back. Hernandez said that the pipe had a value of between $50 and $500. After talking with Goolsby, Hernandez went home and then called the police.

Later that afternoon, Hernandez went back to work. She testified that Appellant came to see her about ten minutes after she returned to work. Hernandez testified that Appellant told her that, "if [he] would have known that was [her] pipe, [he] never would have taken it." Appellant also told Hernandez that "Lupe Ramirez told [him he] could have it." Hernandez said that she told Appellant, "Well, Lupe Ramirez doesn't live there."

Goolsby testified that his business paid Appellant $102 for the pipe. Goolsby said that Hernandez came into his business and asked him whether Appellant had sold him some pipe. He told Hernandez that Appellant had sold some pipe. Goolsby testified that Hernandez told him that the pipe belonged to her. Goolsby got his money back from Appellant and held onto the pipe for Hernandez. Later, Acosta picked up the pipe from Goolsby's business.

Hernandez made a theft report to Lamesa Police Officer Adrian Casias. Officer Casias prepared an initial report and then turned the case over to Lamesa Police Detective Ariel Rodriguez for investigation. Detective Rodriguez testified that Hernandez told him that Appellant took the pipe without her permission. On August 13, 2010, Appellant gave Detective Rodriguez a written statement. Appellant stated in the statement that Lupe Ramirez told him that he had "some pipe that needed to be removed," that Lupe Ramirez told him the pipe was located "behind the alley outside of a fence beside the Rodriguez Store off of South 3rd

5

Street," and that "[he] removed them for [Lupe Ramirez]." Appellant also stated that he later found out that the pipe was stolen. Appellant told Detective Rodriguez that Lupe Ramirez was Hispanic. Detective Rodriguez testified that there were several Lupe Ramirezes in the area. Detective Rodriguez said that he asked Appellant for more identifying information about Lupe Ramirez but that Appellant never provided him any additional information.

Detective Rodriguez testified that Goolsby told him that the resale value of the pipe was $40 to $45 per joint. Detective Rodriguez took pictures of the pipe, and those pictures were admitted into evidence.

Appellant testified that he did not intend to steal property from anybody. He testified that he did volunteer work at the senior citizens center in Lamesa. He said that he met Lupe Ramirez at the center. Appellant described Ramirez as being "a little bit taller than [Appellant], kind of an older guy, probably about 61, 62 years old, dark-complected." According to Appellant, Lupe Ramirez asked Appellant if he would move some pipe for him. Appellant said that Lupe Ramirez told him that the pipe belonged to him, that the pipe was on his property, and that he needed the pipe moved so that he could mow in the alley. Appellant drove into the alley. He said that he found the pipe in the location that Lupe Ramirez had described. Appellant said that the pipe was outside the fence of a backyard. He testified that each pipe was a "good 60-foot" long and that he loaded the pipe onto a trailer. He said that he saw Hernandez drive by when he was in the alley. Appellant said that he knew Hernandez because he was on probation. Appellant testified that he was in the alley for forty-five minutes to an hour loading the pipe.

Appellant said that he went to Goolsby's business after he loaded the pipe. He said that he had known Goolsby for about twenty years. Appellant said that Goolsby paid him $102 for the pipe and that he intended to give $78 of that money to Lupe Ramirez. Appellant testified that he saw Hernandez when he was at

Goolsby's business. He said that he waved at her and that he did not try to run or to hide from her. He testified that, later that day, Goolsby found him and told him the pipe was stolen. Appellant said that he gave Goolsby his money back.

Appellant testified that he did not know Acosta. Appellant said that he took the pipe because of what Lupe Ramirez had told him. He said that he gave Detective Rodriguez a physical description of Lupe Ramirez "off the jump." Appellant said that he told Detective Rodriguez how tall Lupe Ramirez was and how much he weighed. Appellant also said that he told Detective Rodriguez that Lupe Ramirez hung out at the senior citizens center.

Appellant said that, later, he told Lupe Ramirez that the pipe was stolen. Appellant testified that Lupe Ramirez again said that the pipe belonged to him. Appellant said that he told Lupe Ramirez to talk to Detective Rodriguez. According to Appellant, Lupe Ramirez said that he was going to a Veterans Administration hospital in Arizona.

Hernandez testified that Appellant took the pipe without her permission. To support his defense, Appellant relied on his testimony that a man named Lupe Ramirez asked him to move the pipe. As the sole judge of the credibility of the witnesses, the jury was free to disbelieve Appellant's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Polk*, 337 S.W.3d at 289. Appellant's testimony about Lupe Ramirez was similar to what Appellant had previously told Detective Rodriguez. Appellant also told Hernandez that Lupe Ramirez said that he could have the pipe. The jury may have believed that Appellant made up the entire story about Lupe Ramirez.

Appellant asserts that his conduct was consistent with his belief that Lupe Ramirez owned the pipe. Appellant did not attempt to hide his activities related to the pipe. He loaded the pipe in broad daylight, and he used his real name when he sold the pipe to Goolsby's business. While Appellant contends that this evidence

7

supported his mistake-of-fact defense, the jury may have believed that Appellant loaded the pipe in the middle of the day in an effort to avoid suspicion and that Appellant did not believe anyone driving by the scene would think he was stealing the pipe. An appellate court may not reevaluate the weight and credibility of the record evidence and thereby substitute its judgment for that of the jury. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

Based on the evidence, the jury could have reasonably concluded that Appellant intended to deprive Hernandez of the pipe. Viewing all the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt and that a rational trier of fact also could have found against Appellant on his mistake-of-fact defense beyond a reasonable doubt. Therefore, the evidence was sufficient to support Appellant's conviction. Appellant's sole issue on appeal is overruled.

## *This Court's Ruling*

We affirm the judgment of the trial court.


TERRY McCALL

JUSTICE


May 16, 2013

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.