ACCEPTED
01-14-00561-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
11/24/2015 4:10:53 PM
CHRISTOPHER PRINE
CLERK

NO. 01-14-00561-CR

IN THE COURT OF APPEALS FOR THE

FIRST DISTRICT OF TEXAS

HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
11/24/2015 4:10:53 PM
CHRISTOPHER A. PRINE
Clerk

**JONATHAN ROSARIO,**
**Appellant**

**V.**

**STATE OF TEXAS,**
**Appellee**

**Appealed From The**
**186th Judicial District Court**
**Of Bexar County, Texas**

**APPELLANT'S MOTION FOR REHEARING**

TO THE HONORABLE COURT OF APPEALS:

JONATHAN ROSARIO, the Appellant in Cause Number 2013-CR-5658 in the 186th District Court of Bexar County, Texas, pursuant to Rule 49 of the Texas Rules of Appellate Procedure, submits this Motion for Rehearing moving this Honorable Court to reconsider its Opinion of November 10, 2015 affirming the judgment and sentence of conviction.

1

## GROUND FOR REVIEW NUMBER ONE

**THE COURT OF APPEALS ERRED BY RULING THAT THE JURY'S REJECTION OF THE APPELLANT'S CLAIM OF SELF-DEFENSE WAS SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE.**

## ARGUMENT AND AUTHORITIES

In the case at bar, this Court held that "the jury could have rationally chosen not to believe [the Appellant's] testimony about the sequence of events and thus implicitly rejected his self-defense claim." Rosario v. State, No. 01-14-00561-CR at 8 (Tex. App. - Houston [1st Dist.], November 10, 2015). The appropriate standard of review, however, regarding whether or not the evidence was legally sufficient to support the jury's rejection of a self-defense claim is to view "all" the evidence – not merely a defendant's testimony. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Brooks v. State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); Smith v. State, 355 S.W.3d 138, 144-145 (Tex. App. - Houston [1st Dist.] 2011, pet. ref'd). This Court in the case at bar, however, focused solely on the Appellant's testimony when this Court stated that, "By testifying, Rosario produced 'some evidence' to support a self-defense claim." Rosario v. State, supra. This Court failed to consider the testimony of other witnesses which also supported the self-defense claim.

2

It is clear from all the evidence at trial that Hill (the complainant) was in an agitated mood. (R - v.6 - 176-177). It was undisputed that a text message was sent from the group Hill was with that stated, "Get ready, we fittin' to fuck up Romello." (R - v.4 - 10, 12). The group Hill was with had knives, brass knuckles, and a taser. (R - v.3 - 71-75, 122-123, 144; R - v.4 - 99; R - v.6 - 28-29, 75, 220). A person in the group Hill was with made a statement that was threatening in that she had "a 40 Glock" nearby at her house and would use it. (R - v.6 - 178-180; R - v.7 - 34). Hill stated to the other group, "I don't give a fuck about you. Get the fuck away from me." (R - v.7 - 29-30). It was clear that everyone in Hill's group wanted to fight. (R - v.6 - 187). Hill's group had some dogs with them that were threatening. (R - v.6 - 135). If there was fighting, there was a worry that the dogs might attack someone. (R - v.6 - 135). Hill and another person from his group were drinking alcohol at this time. (R - v.7 - 31-32). The group Hill was with outnumbered the group which included the Appellant, Jonathan. (R - v.5 - 44).

Prior to fighting with Jonathan, Hill fought with two people. (R - v.4 - 19). A member of Hill's group brandished his taser in a threatening manner at the other group. (R - v.3 - 147; R - v.4 - 208). At this point, Hill began fighting with another person, and then assaulted another person and knocked out one person. (R - v.4 - 208-210, 214; R - v.6 - 30-31, 104). Everyone "got wound up" and it turned into "a real

3

big brawl." (R - v.5 - 83; R - v.6 - 26, 104). Nobody wanted to stop any of the fighting, and "a bunch of people have weapons" so it was "not a good situation." (R - v.6 - 191). A big fight broke out and "everybody just started swinging" and members of Hill's group "pulled out more weapons." (R - v.6 - 192). Jonathan was terrified when he saw the knives and Taser. (R - v.7 - 179). Everyone began fighting and it was a very intense and emotional situation. (R - v.4 - 122, 124; R - v.6 - 26).

During the fighting, Jonathan attempted to stop Hill from hitting Shay and continuing the fighting. (R - v.6 - 109-110, 112; R - v.7 - 195, 196). Hill struck Jonathan who then fell to the ground. (R - v.6 - 109-110; R - v.7 - 197-203). Hill (who was nineteen years old) had Jonathan (who was only seventeen years old) on the asphalt and was beating Jonathan. (R - v.6 - 109-110; R - v.7 - 48-49, 52, 64, 159). At this time "it was a free for all. Everybody was hitting everybody." (R - v.7 - 56). Hill was punching Jonathan in the head and banging his head on the asphalt street. (R - v.7 - 203). During this assault, Jonathan sustained wounds to include a head injury, chin injury, lip injury, bruising to the neck and chest, and an elbow injury. (R - v.5 - 91; R - v.7 - 210-216; R - v.10 - State's Exhibit 37). Jonathan suffered a concussion from the beating by Hill, and Hill then began to choke Jonathan. (R - v.7 - 178, 203, 205). Jonathan was blacking out and thought he was going to die, so he pushed Hill away from him with his hand and stabbed Hill with

4

the paring knife. (R - v.7 - 205). Someone pulled Hill off of Jonathan and the fighting ended. (R - v.7 - 56).

After the fighting ended, Hill stood up but something was wrong with him. (R - v.6 - 153). When Hill stood, the fighting was already ended. (R - v.6 - 155). Jonathan was standing by Shay. (R - v.6 - 154). Someone yelled that Hill had been "snuffed" and everyone ran away from the area since Jonathan feared retaliation. (R - v.7 - 57). Jonathan was very upset and shaking after the fight with Hill. (R - v.5 - 94). Jonathan was bleeding while he was in the car and there was a lot of blood coming from Jonathan. (R - v.6 - 200-201). Everything happened in about four or five minutes. (R - v.4 - 124).

Based upon a review of all the above evidence and not merely the testimony of the Appellant, the jury's rejection of the self-defense claim was not supported by legally sufficient evidence. This Court erred by limiting its decision only to the testimony of the Appellant. See Jackson v. Virginia, supra; Brooks v. State, supra; Smith v. State, supra. This Honorable Court should withdraw its opinion of November 10, 2015, and sustain the Appellant's Point of Error One.

## GROUND FOR REVIEW NUMBER TWO

**THE COURT OF APPEALS ERRED BY RULING THAT THE EVIDENCE WAS LEGALLY SUFFICIENT TO SUPPORT THE JURY'S REJECTION OF THE CLAIM THAT THE MURDER WAS COMMITTED UNDER THE IMMEDIATE**

## INFLUENCE OF SUDDEN PASSION ARISING FROM AN ADEQUATE CAUSE.

## ARGUMENT AND AUTHORITIES

In the case at bar, this Court held that, "The jury could have rationally concluded that, by anticipating the fight and preparing a response, Rosario had time to deliberate and was not acting under the immediate influence of sudden passion." Rosario v. State, supra, at 11. This Court stated that, "Rosario asserts that because Hill attacked, choked, and injured him, the evidence is legally insufficient to support the jury's negative finding on the punishment issue of sudden passion." Id. This Court failed to consider all the evidence relied upon by the Appellant as to this issue.

Witnesses testified that prior to the assault on the Appellant by Hill, everyone "got wound up" and it turned into "a real big brawl." (R - v.5 - 83; R - v.6 - 26, 104). Many people were fighting, and "a bunch of people have weapons" so it was "not a good situation." (R - v.6 - 191). A big fight broke out and "everybody just started swinging" and Hill's group "pulled out more weapons." (R - v.6 - 192). Jonathan was terrified when he saw the knives and Taser brandished by Hill's group. (R - v.7 - 179). Prior to the assault on the Appellant by Hill, everyone began fighting and it was a very intense and emotional situation. (R - v.4 - 122, 124; R - v.6 - 26).

Witnesses testified that Hill struck the Appellant (Jonathan) who then fell to the ground. (R - v.6 - 109-110; R - v.7 - 197-203). Several state and defense witnesses

6

testified that Hill had Jonathan on the asphalt and was beating Jonathan. (R - v.6 - 109-110; R - v.7 - 48-49, 52, 64, 159). The evidence was undisputed that during this assault on Jonathan by Hill, Jonathan sustained wounds to include a head injury, chin injury, lip injury, bruising to the neck and chest, and an elbow injury. (R - v.5 - 91; R - v.7 - 210-216; R - v.10 - State's Exhibit 37). Jonathan suffered a concussion from the beating by Hill, and Hill then began to choke Jonathan. (R - v.7 - 178, 203, 205). Jonathan was blacking out and thought he was going to die, so he pushed Hill away from him with his hand and stabbed Kevin with the paring knife. (R - v.7 - 205). Someone pulled Hill off of Jonathan and the fighting ended. (R - v.7 - 56).

Jonathan was very upset and shaking after the fight with Hill. (R - v.5 - 94). Jonathan was bleeding while he was in the car and there was a lot of blood coming from Jonathan. (R - v.6 - 200-201). Everyone in the car with Mello and Jonathan were in shock since the rematch fight was not a clean fight given how Huizar's crew attacked Mello's friends. (R - v.5 - 94). Everything happened in about four or five minutes. (R - v.4 - 124).

Jonathan could not have anticipated that Hill would assault Jonathan given the size of the two groups and give the above described sudden turn of events that precipitated the fighting between the two groups. Additionally, Jonathan could not have anticipated that the fighting between the two groups would result in Hill

7

assaulting Jonathan. The jury could not have rationally concluded that Jonathan anticipated the fight as claimed by this Court. The jury could not have rationally concluded, as claimed by this Court, that Jonathan had time to deliberate especially since state and defense witnesses testified that, prior to Hill assaulting Jonathan, everyone began fighting and it was a very intense and emotional situation (R - v.4 - 122, 124; R - v.6 - 26) and "it was a free for all. Everybody was hitting everybody." (R - v.7 - 56). Clearly, Jonathan was acting under the immediate influence of sudden passion. Based upon a review of all the above evidence from state and defense witnesses, the jury's rejection of the sudden passion claim was not supported by legally sufficient evidence. This Honorable Court should withdraw its opinion of November 10, 2015, and sustain the Appellant's Point of Error Two.

## GROUND FOR REVIEW NUMBER THREE

**THE COURT OF APPEALS ERRED BY RULING THAT THE EVIDENCE WAS FACTUALLY SUFFICIENT TO SUPPORT THE JURY'S REJECTION OF THE CLAIM THAT THE MURDER WAS COMMITTED UNDER THE IMMEDIATE INFLUENCE OF SUDDEN PASSION ARISING FROM AN ADEQUATE CAUSE.**

## ARGUMENT AND AUTHORITIES

In the case at bar, this Court held that "there was factually-sufficient evidence to support the jury's rejection of Rosario's sudden-passion claim." Rosario v. State, supra, at 13. This Court stated that, "If the jury believed other witnesses instead of

8

Rosario, it could have believed that Rosario had time to cool off between the end of the fight and the moment he approached Hill with a knife." Id. Jonathan's testimony was not the only evidence of sudden passion. This Court failed to consider all the evidence relied upon by the Appellant as to this issue.

State witnesses Godley and Valdez testified that prior to the assault on the Appellant by Hill, everyone "got wound up" and it turned into "a real big brawl." (R - v.5 - 83; R - v.6 - 26, 104). State witness Stuckey testified that prior to the assault on the Appellant by Hill, many people were fighting, and "a bunch of people have weapons" so it was "not a good situation." (R - v.6 - 191). State witness Suckey testified that a big fight broke out and "everybody just started swinging" and Hill's group "pulled out more weapons." (R - v.6 - 192). Jonathan was terrified when he saw the knives and Taser brandished by Hill's group. (R - v.7 - 179). State witnesses James and Valdez testified that, prior to the assault on the Appellant by Hill, everyone began fighting and it was a very intense and emotional situation. (R - v.4 - 122, 124; R - v.6 - 26).

Witnesses testified that Hill struck the Appellant (Jonathan) who then fell to the ground. (R - v.6 - 109-110; R - v.7 - 197-203). Several state and defense witnesses testified that Hill had Jonathan on the asphalt and was beating Jonathan. (R - v.6 - 109-110; R - v.7 - 48-49, 52, 64, 159). The evidence was undisputed that during this

9

assault on Jonathan by Hill, Jonathan sustained wounds to include a head injury, chin injury, lip injury, bruising to the neck and chest, and an elbow injury. (R - v.5 - 91; R - v.7 - 210-216; R - v.10 - State's Exhibit 37). Jonathan suffered a concussion from the beating by Hill, and Hill then began to choke Jonathan. (R - v.7 - 178, 203, 205). Jonathan was blacking out and thought he was going to die, so he pushed Hill away from him with his hand and stabbed Kevin with the paring knife. (R - v.7 - 205). Someone pulled Hill off of Jonathan and the fighting ended. (R - v.7 - 56).

State witness Godley testified that Jonathan was very upset and shaking after the fight with Hill. (R - v.5 - 94). State witness Stuckey testified that, after the fight, Jonathan was bleeding while he was in the car and there was a lot of blood coming from Jonathan. (R - v.6 - 200-201).

Based upon the above testimony of state and defense witnesses, Jonathan's testimony was not the only testimony regarding the assault by Hill on Jonathan. Contrary to this Court's statement, state and defense witnesses other than Jonathan established the fact that Jonathan did not have time to cool off between the time of the fight with Hill and when Jonathan stabbed Hill with the knife during this fight. There was not factually-sufficient evidence to support the jury's rejection of Jonathan's sudden-passion claim. This Court failed to consider all the evidence relied upon by the Appellant as to this issue. Based upon a review of all the above evidence

10

from state and defense witnesses, the jury's rejection of the sudden passion claim was not supported by factually sufficient evidence. This Honorable Court should withdraw its opinion of November 10, 2015, and sustain the Appellant's Point of Error Three.

### PRAYER

WHEREFORE, for the reasons stated above and for the reasons stated in the Brief for the Appellant, this Court should grant the Appellant's Motion for Rehearing and upon rehearing, reverse the judgment of the trial judge and enter a judgment of acquittal, or in the alternative, remand this cause for a new trial, or in the alternative, remand this cause for a new punishment hearing.

Respectfully submitted,

GROSS & ESPARZA, P.L.L.C.

/s/ Michael C. Gross
Michael C. Gross
State Bar No. 08534480
106 South St. Mary's Street, Suite 260
San Antonio, Texas 78205
(210) 354-1919
(210) 354-1920 Fax

Attorney for the Appellant,
JONATHAN ROSARIO

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was emailed to Enrico Valdez, Assistant District Attorney, jeanette.canales@bexar.org on the 24th day of November 2015.

/s/ Michael C. Gross

## CERTIFICATE OF COMPLIANCE

1.      The brief complies with the type-volume limitation imposed by Rule 9.4(i) of the Texas Rules of Appellate Procedure because the brief contains 2,496 words excluding the signature, proof of service, certification, certificate of compliance, and appendix.

2.      The brief complies with the typeface and the type style requirements of Rule 9.4(e) of the Texas Rules of Appellate Procedure because this brief has been prepared in a proportionally spaced typeface using WordPerfect 6.1 in 14 point font and Times New Roman type style.

/s/ Michael C. Gross