**Opinion filed April 18, 2019**



## In The

# Eleventh Court of Appeals

_____

## No. 11-17-00103-CR

_____

### NOE LOPEZ TREVINO, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 42nd District Court**
**Taylor County, Texas**
**Trial Court Cause No. 26485A**

## MEMORANDUM OPINION

The jury convicted Noe Lopez Trevino of the first-degree felony offense of murder and assessed his punishment at confinement for a term of twenty-five years in the Institutional Division of the Texas Department of Criminal Justice. TEX. PENAL CODE ANN. § 19.02(b)(2) (West 2011). Appellant brings two issues on appeal. He contends that (1) the evidence was legally insufficient to support the jury's rejection of his self-defense claim and (2) the trial court erred when it failed to submit jury instructions on the use of deadly force in the defense of property and on apparent danger. We affirm.

*Background Facts*

The jury convicted Appellant of the murder of Lewis Maston. Maston's granddaughter, Erica Hill, testified that she went to the Ol Skool nightclub with Maston. Erica decided to leave after a confrontation occurred inside the club. When Erica walked outside, more than a dozen people were standing in the middle of the street, including Appellant and his cousins, Deanna Flores and Tesia Flores.

Erica testified that Appellant started to argue with two men in the middle of the street. The group of people moved to a vacant lot by Gloria's Grill, a restaurant across the street from Ol Skool. Erica testified that Appellant pulled up his shirt and showed the men a knife in his waistband. The men backed away from Appellant. Nevertheless, Appellant continued to yell, and he and the two men continued to argue.

Erica testified that Maston came out of the club and saw Erica in the vacant lot near the altercation. Erica believed that Maston went over to Appellant and the two men to prevent a fight. Erica testified that Maston was known for trying to break up fights and keeping the peace. Maston pushed Appellant while Maston was trying to separate everyone. The two men backed further away from Appellant and stopped yelling. Next, Appellant pushed Maston back, and Maston hit Appellant. Then, Appellant grabbed Maston and started "jabbing" Maston. Erica testified that she did not realize that Appellant was stabbing Maston until she saw the blood running down his shirt. The two men pulled Appellant away from Maston. Appellant got into his car with Deanna and Tesia and drove away. Erica then called 9-1-1.

Another granddaughter of Maston, Ebony Hill, testified that, on the night of the alleged offense, she met Erica and Maston at Ol Skool. Ebony described Maston as about six feet tall and three hundred pounds. When Ebony left the club, she found Erica and a friend, Maurisha Walker, outside Ol Skool. Ebony observed two men arguing with Appellant. According to Ebony, Maston came out of the club to check

2

on her and Erica. After Maston saw the altercation, Maston stepped between Appellant and the two men and appeared to try to prevent a fight. Ebony testified that Maston pushed Appellant to the side but did not hit or swing at Appellant. After that, Appellant grabbed Maston and appeared to start punching him. Ebony, like Erica, did not realize that Appellant was stabbing Maston at the time. Ebony testified that Deanna and Tesia pulled Appellant off Maston, but Appellant "looked like he wanted to keep stabbing [Maston], but [Ebony and Tesia] literally stopped [Appellant]."

Maurisha Walker is a close friend of Ebony. Walker testified that she saw Appellant and Maston arguing when she left Ol Skool. Next, Walker saw what looked like Appellant punching Maston repeatedly, and Appellant did not stop until Deanna and Tesia pulled Appellant back. Walker testified that Appellant looked like he "didn't want to leave" and wanted to keep attacking Maston. The next thing Walker heard was Ebony yelling that her grandpa had been stabbed.

Deanna Flores, Appellant's cousin, testified that she went to Nueva Luna, another nightclub next to Ol Skool, with Appellant and her sister, Tesia. According to Deanna, when they left the club, a woman began yelling at Appellant in the parking lot. This woman and a couple other women started to follow them to Appellant's car. Deanna testified that the altercation escalated when Maston approached Appellant. Deanna claimed that Maston swung at Appellant a couple times before Appellant defended himself. Deanna did not see Appellant defend himself. Deanna did not report this incident to the police because she thought it was "just a fight."

Tesia Flores testified that, when she left Nueva Luna with Appellant and Deanna, a group of people started arguing with Appellant while they walked to Appellant's car. Tesia did not know why the group was angry with Appellant. Next, one of the men, presumably Maston, swung at Appellant. Tesia did not see

Appellant stab Maston, and she did not remember if she pulled Appellant away from Maston.

Tesia testified that she did not remember anyone hitting Appellant or threatening him with serious bodily injury or a deadly weapon. Tesia acknowledged that no one prevented Appellant from leaving and that Maston would still be alive if Appellant, Tesia, and Deanna had ignored the verbal confrontation and left. However, she did not think that they could have gotten into the car without a confrontation because she "felt we were trying to avoid anything from happening [to] the car, them following us or hitting the car or anything."

Appellant testified on his own behalf at the guilt/innocence phase. He testified that, when he left Nueva Luna, he saw Walker outside and casually greeted her. He admitted that he and Walker "had words" several weeks prior. Subsequently, Erica and Ebony started arguing with Deanna and Tesia. Then, according to Appellant, Maston and three men approached Appellant in an aggressive manner, and Maston asked Appellant why his granddaughters were arguing with Appellant, Deanna, and Tesia. By then, a large crowd had gathered. Appellant testified that, after dodging two of Maston's punches, he defended himself by attacking Maston with his knife. Appellant claimed that nobody pulled him off Maston; rather, one of the men from the original altercation with Appellant grabbed Maston. Appellant did not report the incident to the police because it did not "cross his mind."

Appellant asserted that he acted in self-defense—he was "being enticed" and "harassed" and he "was in fear for his life" and for his cousins. Appellant denied scaring off the two men with a knife and claimed that any witnesses who testified that he did so were lying. Appellant claimed that he fled to Iowa, where he was ultimately arrested, because he was receiving threats by phone and was afraid for his life.

4

Abilene Police Detective Chris Milliorn testified that he responded to a report of an injured person outside Ol Skool. At Ol Skool, Detective Milliorn found Maston unconscious on the ground and a woman tending to his wounds yelling, "It was Noe." An ambulance transported Maston to the hospital.

Surgeon Rhett Lohman testified that he treated Maston at the hospital. Maston had multiple stab wounds to his chest, abdomen, and arms. Maston also had stab wounds on the back of his arm; these injuries were consistent with defensive wounds. Maston tested positive for alcohol but not for any illegal substances. Subsequently, Maston died. Dr. Richard Christian Fries, a deputy medical examiner, testified that he performed an autopsy on Maston and determined that the cause of death was stab wounds to the chest.

*Sufficiency of the Evidence*

In his first issue, Appellant contends that the evidence was legally insufficient to support the jury's rejection of his self-defense claim. Appellant alleges that Maston was the first aggressor, that Maston used deadly force, and that at least two men threatened Appellant to the point that he had to brandish a knife to deter their advance.

Self-defense is a fact issue to be determined by the jury, and a jury's verdict of guilt is an implicit finding that it rejected a defendant's self-defense theory. *Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991). For self-defense claims, the defendant has the burden of producing some evidence to support the claim. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *see also Saxton*, 804 S.W.2d at 913–14 (contrasting self-defense from affirmative defenses and explaining how burdens shift for self-defense). If the defendant produces some evidence, the State has "the burden of persuasion to disprove the raised defense." *Zuliani*, 97 S.W.3d at 594. The State's burden does not require the production of any additional evidence; instead, "it requires only that the State prove its case beyond

5

a reasonable doubt." *Id.*; *see Saxton*, 804 S.W.2d at 913. "Because the State bears the burden of persuasion to disprove" a claim of self-defense "by establishing its case beyond a reasonable doubt, we review both legal and factual sufficiency challenges to the jury's rejection of such a defense under" the legal sufficiency standard. *Smith v. State*, 355 S.W.3d 138, 145 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

We review a sufficiency of the evidence issue under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Thus, when reviewing the sufficiency of the evidence to support a conviction involving a claim of self-defense, we review the sufficiency of the evidence to support a jury's rejection of a defendant's self-defense theory by examining all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense and also could have found against the defendant on the self-defense issue beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 914 (citing *Jackson*, 443 U.S. 307).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the

factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

There is no dispute that Maston died as a result of injuries inflicted by Appellant. Under the Penal Code, a person commits murder if he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. PENAL § 19.02(b)(2). The jury determined that Appellant committed murder under this provision of the Penal Code. However, the Penal Code also states that an individual "is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id.* § 9.31(a). Furthermore, the Penal Code provides that an individual "is justified in using deadly force against another . . . if the actor would be justified in using force against the other" and "when and to the degree the actor reasonably believes the deadly force is immediately necessary . . . to protect the actor against the other's use or attempted use of unlawful deadly force." *Id.* § 9.32(a). "'Deadly force' means force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." *Id.* § 9.01(3). A reasonable belief is a belief that would be held by an ordinary and prudent person in the same circumstances as the actor. *Id.* § 1.07(a)(42) (West Supp. 2018).

Appellant contends that the evidence was insufficient to disprove self-defense because no evidence was offered to show that he did not act unreasonably. To the contrary, Appellant asserts that the evidence established that he believed he was under attack by deadly force. In support of this proposition, Appellant relies on aggravated assault cases wherein the jury determined that a defendant's use of his

hands to commit an assault constituted the use of a deadly weapon. Appellant essentially contends that the jury was required to accept Maston's alleged punching of Appellant as the use of deadly force. Appellant further contends that it was irrational for the jury to conclude that his response to Maston's punches was unreasonable. We disagree with Appellant's analysis.

The aggravated assault cases that Appellant cites are distinguishable because the jury found that the use of hands in those cases constituted the use of deadly force. The jury did not make a similar finding in this case. Additionally, the jury was not required to accept that Maston's actions constituted the use of deadly force against Appellant. Erica and Ebony testified that Maston was attempting to break up an altercation. Ebony testified that Maston did not hit or swing at Appellant.

Furthermore, there is evidence supporting the jury's rejection of Appellant's actions as being reasonable. The State contends that the evidence in this case is similar to the facts in *Smith v. State*. We agree. The defendant in *Smith* argued that he stabbed the victim because he was being "punched, hit, rushed, and 'aggressed'" and that he needed to protect himself and others. *Smith*, 355 S.W.3d at 146. The court noted that the jury's decision to reject the defendant's defensive claims ultimately hinged on the credibility of the witnesses. *Id.* "The statements of the defendant and his witnesses do not conclusively prove a claim of self-defense or defense of a third party." *Id.*

As was the case in *Smith*, the jury chose not to believe the version of events presented by Appellant and his cousins. The credibility of Appellant's self-defense testimony was solely within the jury's province to determine, and they were free to reject it. *See Saxton*, 804 S.W.2d at 914. Additionally, there was evidence that undermined Appellant's defensive claims, including the testimony of Maston's granddaughters and Walker, as well as Appellant's flight after the altercation. *See*

8

*Bigby v. State*, 892 S.W.2d 864, 884 (Tex. Crim. App. 1994) ("Evidence of flight . . . shows a consciousness of guilt of the crime for which the defendant is on trial.").

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found the elements of murder beyond a reasonable doubt while rejecting Appellant's self-defense claim. We overrule Appellant's first issue on appeal.

*Jury Charge Error*

In his second issue, Appellant contends that the trial court erred when it failed to sua sponte submit an instruction to the jury on the use of deadly force in the defense of property. Appellant asserts that he was entitled to this instruction because the evidence shows that Appellant was acting, in part, for the preservation of his car. Likewise, Appellant contends that the trial court erred when it failed to include a separate "apparent danger" instruction in the jury charge. We disagree.

"[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In our review of a jury charge, we first determine whether error occurred; if no error occurred, our analysis ends. *Id.* If error occurred, whether it was preserved then determines the degree of harm required for reversal. *Id.*; *see Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). Where, as here, Appellant did not raise a timely objection to the jury instructions, Appellant will obtain a reversal only if the error is so egregious and created such harm that he "has not had a fair and impartial trial." *Barrios*, 283 S.W.3d at 350 (quoting *Almanza*, 686 S.W.2d at 171).

Appellant first contends that he was entitled to a jury instruction on the use of deadly force in the defense of property because the evidence shows that Appellant was acting, in part, to protect his car from the "imminent threat of criminal mischief in the night" against his car. A person is justified in using deadly force against

9

another to protect land or tangible, movable property when he reasonably believes deadly force is immediately necessary "to prevent the other's imminent commission of . . . criminal mischief during the nighttime." PENAL § 9.42(2)(A). However, Appellant did not request an instruction on the defense of property.

A trial judge has the duty to instruct the jury on the law applicable to the case even if an appellant fails to object to inclusions or exclusions in the charge. TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). However, a trial judge does not have a duty to instruct the jury sua sponte on unrequested defensive issues because an unrequested defensive issue is not the law "applicable to the case." *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013) (citing *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998)); *see* CRIM. PROC. art. 36.14. An appellant cannot complain on appeal about the trial judge's failure to include a defensive instruction that the appellant did not preserve by request or objection—he has procedurally defaulted any such complaint. *Id.*[1] Accordingly, the jury charge's omission of the defensive issue of defense of property did not constitute error.

Appellant next contends that he was entitled to an apparent-danger instruction in addition to the court's self-defense instruction. Because the trial court included a self-defense instruction in the jury charge, self-defense is the law applicable to this case. *See Vega*, 394 S.W.3d at 519. Thus, the trial court assumed the duty to administer that instruction correctly, and a flaw in the charge on this issue would be error. *Id.*; *see Mendez v. State*, 545 S.W.3d 548, 553 (Tex. Crim. App. 2018).

"Texas courts have held that when a defendant claims self-defense, his rights are fully preserved (and the concept of 'apparent danger' is properly presented) when

---

[1]Appellant acknowledges that the current state of the law precludes his contention that the jury charge is erroneous because the trial court should have sua sponte included a defensive instruction on the defense of property. He urges us to overrule *Posey* and its progeny. We decline to do so. *See Zarychta v. State*, 44 S.W.3d 155, 162 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (As an intermediate court of appeals, we are bound by controlling authority from the Court of Criminal Appeals.).

a jury charge (1) states that a defendant's conduct is justified if he reasonably believed that the deceased was using or attempting to use unlawful deadly force against the defendant, and (2) correctly defines 'reasonable belief.'" *Bundy v. State*, 280 S.W.3d 425, 430 (Tex. App.—Fort Worth 2009, pet. ref'd) (citing *Valentine v. State*, 587 S.W.2d 399, 401 (Tex. Crim. App. [Panel Op.] 1979)). Thus, a separate instruction for apparent danger is not required when the charge adequately defines reasonable belief and explains when reasonable belief justifies the use of deadly force. *Id.*

Here, the jury charge included an instruction on the issue of self-defense. The jury was instructed:

> If you all agree the state has proved, beyond a reasonable doubt, that the defendant is guilty of the offense of murder as charged in paragraph one of the indictment or murder as charged in paragraph two of the indictment, you must next consider whether the defendant's use of force was made in self-defense.
>
> . . . .
>
> A person's use of deadly force against another that would otherwise constitute the crime of murder is not a criminal offense if the person *reasonably believed the force used was immediately necessary to protect the person against the other's use or attempted use of unlawful deadly force*.

(Emphasis added). Additionally, the trial court's charge defined "reasonable belief" as a "belief that an ordinary and prudent person would have held in the same circumstances as the defendant." Thus, Appellant was not entitled to a separate instruction on apparent danger because the charge adequately defined reasonable belief and explained when reasonable belief justifies the use of deadly force. *See Valentine*, 587 S.W.2d at 401; *Bundy*, 280 S.W.3d at 430. Thus, the trial court did not err when it did not provide a separate instruction on apparent danger. We overrule Appellant's second issue on appeal.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


April 18, 2019

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[2]

Willson, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.